[No. D040863. Fourth Dist., Div. One. Apr. 23, 2003.]

In re LUKE M. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
JEFFREY L., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III of the Discussion.

## COUNSEL

Peter Ferrera, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Gary C. Seiser and Patrice Plattner-Grainger, Deputy County Counsels, for Plaintiff and Respondent.

Julie E. Braden, under appointment by the Court of Appeal, for Minors.

## OPINION

**HALLER, Acting P. J.**—Jeffrey L. (Jeffrey or father) appeals orders under the Welfare and Institutions Code[2] placing his children, Luke M. and Lenay M., with their paternal aunt and uncle, rather than with him, pending reunification with the children's mother, Kathy M. (Kathy or mother). He

---

[2]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

contends (1) the court improperly considered the statutes relating to sibling relationships when making its decision; (2) the court's ruling violated his substantive due process rights by placing sibling rights over parental rights; (3) substantial evidence did not support the finding under section 361.2 that the children would suffer detriment if placed with him; (4) the court abused its discretion by requiring Interstate Compact on Placement of Children (ICPC) approval before placing the children with him; and (5) the court did not order appropriate reunification services for him. For the reasons set forth in this opinion, we reject his arguments except as to the issue of reunification services. The parties agree Jeffrey is entitled to appropriate reunification services. Accordingly, we reverse the orders in part and direct the court to hold a new dispositional hearing for the limited purpose of ordering an appropriate reunification plan for Jeffrey.[3]

### FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey and Kathy had three children from their nonmarital relationship: Luke, born in 1992; Lenay, born in 1994; and Lindsey, born in 1997. Leanna, who is not Jeffrey's biological daughter, was born in October 1988. Leanna viewed Jeffrey as her biological father and, during the course of these proceedings, the court granted Jeffrey's application for de facto father status for Leanna. Luke and Lenay are the only children at issue in this appeal, but we will present facts regarding the other children to provide the context for the court's ruling.

In 1997, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions on behalf of the children because Lindsey tested positive for drugs at birth and the parents did not comply with a voluntary contract to keep a clean and safe home. As a result of the Agency's intervention, Jeffrey entered alcohol treatment. Kathy successfully reunified with the children and apparently became their custodial parent. At some point not clear in the record, Kathy and Jeffrey ended their relationship.

In March 1999, Kathy obtained a three-year restraining order against Jeffrey[4] based on allegations he had physically and verbally abused her. Some of his abusive behavior was fueled by alcohol. By fall 2001, Jeffrey had moved to Ohio and appeared to have conquered his alcohol and domestic violence problems.

---

[3]In connection with our request for supplemental briefing, minor's counsel provided us with information not before the trial court at the time of the disposition ruling on appeal. We have not considered these matters in rendering our opinion.

[4]Jeffrey was convicted of violating the initial temporary restraining order.

In April 2002, the Agency removed all four children and filed section 300 petitions on behalf of the children after police arrested Kathy for drug possession. The petitions alleged failure to protect under section 300, subdivision (b) because (1) Kathy used methamphetamine, was not providing a home for the children, and had been arrested for possessing illegal drug paraphernalia; and (2) Jeffrey had been unable to protect and supervise the children. The petitions also alleged no provision for support under section 300, subdivision (g) because Kathy was incarcerated, Jeffrey was out of state, and neither parent was able to arrange appropriate or adequate care.

In two May 2002 reports, the Agency's social worker recommended that the children be placed with Jeffrey in Ohio. The social worker noted that Kathy wanted them to remain in California, but that she had a long history of substance abuse (apparently relapsing after five years of sobriety) and difficulty providing the children with a stable environment. Jeffrey had a job and medical insurance available for the children in Ohio, and a large home near an elementary school. He had had weekly telephone contact with the children since he moved to Ohio, although at times he was unable to locate the children because of Kathy's transient lifestyle. When he lost contact with the children, he contacted the Agency for assistance and made numerous attempts to locate them. Before he moved to Ohio, all four children stayed with Jeffrey for three weeks in October 2001.

The social worker noted the extremely strong bond between the children, as evidenced by a Polinsky Children's Center counselor's assessment that it would be detrimental to separate the children. Based on the overriding need not to separate the children, as well as Jeffrey's ability to provide for them, the social worker recommended that the children be sent to reside with Jeffrey in Ohio upon completion of a favorable ICPC.

At a May 2002 jurisdictional hearing, each parent (represented by counsel) submitted to the social worker's May 2002 reports on the section 300, subdivision (b) counts. The court made true findings on those counts, and dismissed the section 300, subdivision (g) counts.

In a July 2002 addendum report, the social worker modified her recommendation. The children were now living with their paternal aunt and uncle.[5] The social worker reported that Leanna (who was to begin high school in August) and Lenay (age eight) did not want to move to Ohio. Luke (age 10) was eager to reside with his father in Ohio. Lindsey (age four) was too young to understand. The mother still preferred all the children stay in

---

[5]Although the paternal aunt and uncle are not biologically related to Leanna, for convenience we use this term even when referring to Leanna.

California, but her second choice was that Luke go to his father; that Lindsey reside with her at a treatment facility, and that Leanna and Lenay remain with their aunt and uncle. Jeffrey told the social worker he did not want Leanna to move to Ohio if that would make her unhappy. The social worker recommended that for the next six months the children should be stabilized in their current setting, allowed to visit Jeffrey in Ohio, and then (for those children who wished to reside with him) slowly transitioned to his home in Ohio. Furthermore, should Kathy make progress in her recovery, her situation could be reassessed as a potential placement for the children.

In an August 2002 report, the social worker again modified her recommendation. On August 14, 2002, Lindsey had been reunified with her mother at the treatment facility. In July 2002, Luke, Lenay, and Lindsey visited Jeffrey in Ohio for two weeks. After the visit to Ohio, Luke stated that although he wanted to visit his father, he no longer wanted to live with him. Luke and Lenay both stated they wanted to stay with their aunt and uncle until their mother is able to move from the treatment facility. Leanna thought she wanted to live with her mother in the future, but definitely did not want to live with her father in Ohio, although she would like to visit him.

The social worker opined that, based on her four-month involvement with the case, the wishes of the children should be followed. She noted that the children are bonded to each other and become depressed when approached with the thought of being separated. Ever since they were removed from their mother, the children had repeatedly asked not to be separated. The children depended upon each other for support, love, and security. Noting that the mother had made great strides in her treatment, the social worker concluded that moving the children to Ohio would be detrimental to them and would cut off the possibility of the mother reunifying as soon as possible. The social worker recommended that Leanna, Luke, and Lenay remain with their paternal aunt and uncle until their mother was able to obtain sober living housing, and that Lindsey continue with her mother at the treatment center.

At an August 23, 2002 disposition hearing, the court heard testimony from Luke, the social worker, and Jeffrey. Explaining her opinion that it would be detrimental for the children to reside with their father, the social worker testified that Luke cried every time she brought up the subject and that he "is extremely connected to his siblings and to his relatives and can't even stand the thought of having to leave them." Further, Lenay sobbed when discussing her visit with her father, is "extremely bonded to Leanna," and wants to live with her mother and her siblings. The social worker reiterated her statement in her report that from the inception of the case, all the children have asked of her is not to be separated from each other.

After the presentation of evidence, the court declared the children to be dependents under section 360, subdivision (d) and removed Leanna, Luke, and Lenay from Kathy's custody pursuant to section 361, subdivision (c)(1). Lindsey was placed with her mother at the treatment center. The court ordered that Leanna, who was not Jeffrey's biological daughter, be placed with her aunt and uncle because to send her to Ohio would seriously impede her mother's ability to reunify with her.

The court found Jeffrey was a nonoffending, noncustodial parent of Luke and Lenay within the meaning of section 361.2. However, the court found placing Luke and Lenay with Jeffrey in Ohio would be detrimental to their emotional well-being because of their significant bond with their siblings. The court observed "the raw emotions and true sense of fear [of] separation from [his] siblings" when Luke testified, and emphasized "the record would [not] come anywhere close to revealing the depth of that young man's reaction to the prospect of being separated." The court noted that both parents acknowledged that separating the children would have an impact on them, and for that reason Jeffrey requested that all four children go with him to Ohio, whereas Kathy requested that all four of them remain in California. After a lengthy exposition of its observations, the court concluded that the children's life experiences had "forced them to bond together in a manner that's far more significant than a normal sibling bond, and I think it's a bond of survival." The court emphasized that the detriment to the children did not arise from any conduct by Jeffrey, but arose from the lack of security which would come from separating them from each other.

The court adopted the permanent plan recommended by the Agency, i.e., that the children be reunified with their mother: first Lindsey, and then the other three children when the mother obtains transitional housing. Pending reunification with the mother, the court ordered that Leanna, Luke, and Lenay be placed with their paternal aunt and uncle in San Diego.

The court also noted that if the mother was not able to reunify, it would have to "balance this differently" even though the same emotional detriment might arise. The court ordered the Agency to develop objective criteria to track the progress of reunification with the mother, including such factors as obtaining housing and maintaining sobriety, and to include a plan for interim visitation with Jeffrey.

#### DISCUSSION

### I. *Placement Order*

Jeffrey contends the statutes protecting sibling relationships apply only to placement of dependents with nonparents, and thus the trial court improperly

invoked those sections in rendering the disposition order denying placement with a *parent*. He also asserts the trial court's ruling placed sibling rights before parental rights in violation of his fundamental right to parent. Further, he challenges the sufficiency of the evidence in support of the court's ruling denying placement with him on the basis that (1) his conduct did not cause any detriment; and (2) without any testimony from an expert, the social worker's and children's opinions regarding placement were insufficient to establish detriment.

## A. *Statutory Framework*

Section 300 governs a dependency court's initial acquisition of jurisdiction over a child. Section 300, subdivision (b) provides that jurisdiction exists when a child is at risk to suffer serious physical harm or illness "*as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child* due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . ." (Italics added.) Section 361, subdivision (c)(1) authorizes the court to remove a child from "*the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated* [if] the juvenile court finds clear and convincing evidence [that] . . . [¶] [t]here is substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor or would be if the minor were returned home, *and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardians' physical custody. . . .*" (Italics added.)

Section 361.2, subdivision (a) governs placement of a child after the dependency court has acquired jurisdiction of a child. The section provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. *If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child.*" (Italics added.)

Various statutes require the court to consider sibling relationships in rendering placement decisions. Section 16002, subdivision (a) states the legislative intent to "ensure the preservation and strengthening of the child's family ties by ensuring that when siblings have been removed from their

home, . . . the siblings will be placed in foster care together . . . ." Section 16002, subdivision (b) requires that the agency "make a diligent effort in all out-of-home placements of dependent children, including those with relatives, to develop and maintain sibling relationships. . . ." Section 361.2, subdivision (i) states that where "the court has ordered removal of the child from the physical custody of his or her parents pursuant to Section 361, the court shall consider whether there are any siblings under the court's jurisdiction, the nature of the relationship between the child and his or her siblings, the appropriateness of developing or maintaining the sibling relationships pursuant to Section 16002, and the impact of the sibling relationships on the child's placement and planning for legal permanence." Section 358.1, subdivision (d) sets forth detailed requirements on the issue of sibling relationships that must be included in the social worker's social study, including a discussion of the nature of the sibling relationships, the appropriateness of maintaining the sibling relationship pursuant to section 16002, an explanation of the efforts made to place the siblings together, and the impact of the sibling relationships on placement and planning for legal permanence. Section 358.1, subdivision (d)(2), specifically instructs the social worker to evaluate such matters as the extent of the bonds between the siblings and whether a sibling expresses a desire to visit or live with his or her sibling. Sections 358[6] and 358.1[7] require that this social study discussing sibling relationships be received in evidence and considered by the court before it renders its disposition decision. Similarly, section 366, subdivision (a), governing review hearings for dependents in foster care, directs the trial court to consider the same matters as set forth in section 358.1, subdivision

---

[6]Section 358, subdivision (b) states in pertinent part: "Before determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker . . . . In any judgment and order of disposition, the court shall specifically state that the social study made by the social worker . . . has been read and considered by the court in arriving at its judgment and order of disposition. . . ."

[7]Section 358.1, subdivision (d) states: "Each social study or evaluation made by a social worker or child advocate appointed by the court, required to be received in evidence pursuant to Section 358, shall include, but not be limited to, a factual discussion of . . . : [¶] . . . [¶] (d)(1) Whether the child has siblings under the court's jurisdiction, and, if any siblings exist, all of the following: [¶] (A) the nature of the relationship between the child and his or her siblings. [¶] (B) The appropriateness of developing or maintaining the sibling relationships pursuant to Section 16002. [¶] (C) If the siblings are not placed together in the same home, why the siblings are not placed together and what efforts are being made to place the siblings together, or why those efforts are not appropriate. [¶] (D) If the siblings are not placed together, the frequency and nature of the visits between siblings. [¶] (E) The impact of the sibling relationships on the child's placement and planning for legal permanence. [¶] (2) The factual discussion shall include a discussion of indicators of the nature of the child's sibling relationships, including, but not limited to, whether the siblings were raised together in the same home, whether the siblings have shared significant common experiences or have existing close and strong bonds, whether either sibling expresses a desire to visit or live with his or her sibling, as applicable, and whether ongoing contact is in the child's best emotional interest."

(d) (i.e., the nature of the sibling relationships, maintenance of the relationship pursuant to section 16002, an evaluation of what efforts are being made to place the siblings together, etc.).

## B. *Analysis*

### 1. *Consideration of Sibling Relationships in Placement Decision*

■ Section 361.2, subdivision (a) requires that the court place a dependent child with a noncustodial, nonoffending parent who requests custody, unless the placement would be detrimental to the child. There is nothing in this section, nor in the statutory scheme set forth above, that expressly or impliedly suggests the court is not permitted to consider sibling relationships as part of its placement determination even when the placement under consideration is with a noncustodial parent. To the contrary, the statutes expressly authorize the court to consider sibling relationships when making its placement decisions. Although the consideration of sibling relationships set forth in sections 16002 and 366 by their terms are confined to a nonparent placement, sections 361.2, subdivision (i) (governing postremoval placement) and 358.1, subdivision (d) (governing the contents of the social worker's social study at disposition hearings) are much broader than section 16002. These latter sections require the court to evaluate the appropriateness of maintaining sibling relationships pursuant to section 16002 (i.e., in nonparent placements), and then, independent of the reference to section 16002, also direct the court to consider the nature and impact of the sibling relationships when making placement orders at the disposition stage. Given this broad language, a court is authorized to evaluate the appropriateness of keeping siblings together, and to consider sibling relationships as one factor, among many, when determining detriment for purposes of its placement decisions. We thus reject Jeffrey's argument that the trial court may not consider the sibling relationships because the placement under consideration was with a noncustodial parent.

We note additionally that Jeffrey characterizes the court's ruling as a "removal" of the children from his custody under section 361.2. However, section 361.2 is not a removal statute. Section 361.2 provides no basis for the court to remove a child from a parent's custody; rather it is one of the statutes that guides the court and the Agency in determining the child's placement *after removal from the custodial parent pursuant to section 361.* Under section 361, the court removes children from the physical custodial parent. (See *In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856 [34 Cal.Rptr.2d 271].) Because Jeffrey was a noncustodial parent, the court did not and was not required to remove the children from him under any statute.

Once removal from the custodial parent under section 361 has occurred, section 361.2 requires the court to evaluate placement with the noncustodial parent based on detriment. As discussed above, the statutory scheme permits the court to consider sibling relationships when making placement decisions under section 361.2.

### 2. *Substantive Due Process (Parental Rights Versus Sibling Rights)*

██ Jeffrey also contends that considering the siblings' relationships with each other infringed on his fundamental rights to make decisions concerning the care, custody, and control of his children. ██ "Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) The dependency statutes fulfill this duty by authorizing judicial intervention to protect children who are at substantial risk of physical or emotional harm. (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 900 [49 Cal.Rptr.2d 900].) The state's compelling interest in protection requires the court to focus on the child's placement and well-being, rather than on a parent's custody challenge. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180 [108 Cal.Rptr.2d 493].) Here, Jeffrey has implicitly acknowledged the court's duty and right to protect the children from emotional harm by not challenging the jurisdictional findings under section 300, the dependency findings under section 360, subdivision (d), or the removal findings from Kathy's physical custody under section 361.

██ Because the state has a right and a duty to protect Luke's and Lenay's well-being, the court must consider whether they will suffer detriment if placed with their father in Ohio. The evidence in this case showed the children's relationship with their siblings was manifestly important to them and that relationship could not be maintained if they moved to Ohio. Based on the court's obligation to focus on their well-being once they were declared dependents, the court could properly consider any factor that would cause them detriment, including disruption of their relationship with Leanna and Lindsey.

Jeffrey's argument that his substantive due process rights were violated because the trial court placed sibling rights over parental rights ignores an important component of the trial court's decision in this case, i.e., that it was in the best interests of the children to reunify with their mother. The social worker opined that moving the children to Ohio would impede reunification

with the mother. Thus, in rendering its placement order, the court also had to balance the children's need to reunify with their custodial parent versus the noncustodial parent's right to custody. Under the circumstances of this case where the custodial parent is trying to reunify and the court has concluded such reunification would best serve the children's interests, Jeffrey's contention that sibling rights were given precedence over parental rights is misplaced.

In reaching these conclusions, we emphasize that we are examining Jeffrey's due process argument in the limited context of placement decisions at the dispositional phase of dependency proceedings. Jeffrey did not challenge the court's jurisdictional findings, nor assert that the dependency declaration improperly interfered with his right to parent. Moreover, the trial court's consideration of sibling relationships was made in the context of evaluating a noncustodial parent's placement rights vis-à-vis a custodial parent's reunification rights. Thus, our decision is a narrow one and we express no opinion regarding the relative importance of sibling relationships and the right to parent where an offending custodial parent fails to reunify and the noncustodial, nonoffending parent requests custody. Here, however, because the court has a compelling duty to protect the children once dependency is declared, the placement is temporary, and reunification efforts with the custodial parent are in progress, Jeffrey has not shown his fundamental due process rights have been violated.

### 3. Substantial Evidence

Having concluded the court did not err in considering the statutes relating to sibling relationships and Jeffrey did not suffer a substantive due process violation when the court placed the children with their aunt and uncle, we turn to Jeffrey's argument that substantial evidence does not support a finding of detriment under section 361.2, subdivision (a). He challenges the sufficiency of the evidence on the basis that (1) there was no nexus between his conduct and the detriment; and (2) without expert testimony, the social worker's and children's opinions were not sufficient to establish detriment.

a. *Nexus between Parental Conduct and Detriment for Purposes of Placement Decisions*

We start with the fundamental premise that the underlying purpose of dependency law is to protect the welfare and best interests of the dependent child. (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 597 [110 Cal.Rptr.2d 679]; *Katheryn S. v. Superior Court* (2000) 82 Cal.App.4th 958,

974 [98 Cal.Rptr.2d 741]; *In re Ninfa S.* (1998) 62 Cal.App.4th 808, 811 [73 Cal.Rptr.2d 209]; *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1165 [53 Cal.Rptr.2d 93].) Accordingly, the purpose of any dependency hearing is to determine and protect the child's best interests. (*In re Clara B.* (1993) 20 Cal.App.4th 988, 999, fn. 5 [25 Cal.Rptr.2d 56].) Here, the court found that if Luke and Lenay were forced to move to Ohio, they would suffer emotional detriment as a result of their separation from their siblings.

Jeffrey argues that the detriment must be related to parental conduct. Clearly, parental conduct is required to support an exercise of jurisdiction under section 300, subdivision (b), in that jurisdiction is premised on the parent's failure to protect the child. Further, in order to justify removal from the custodial parent's home, section 361, subdivision (c)(1) requires a showing that there are no reasonable means to protect the child without removal from the home. In contrast, section 361.2, which governs *placement* after the child has been made a dependent of the court and removal from the custodial parent has already occurred, conspicuously does *not* require that the court find the noncustodial parent might fail to protect the child or that there are no reasonable means to protect the child in the noncustodial parent's home in order to deny the noncustodial parent's request for placement. Instead, section 361.2 simply instructs the court to consider whether placement with the noncustodial parent would be "detrimental to the safety, protection, or physical or emotional well-being of the child." A detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer net harm. (Cf. *In re Cody W.* (1994) 31 Cal.App.4th 221, 227 [36 Cal.Rptr.2d 848].) Sibling relationships are clearly a relevant consideration in evaluating a child's emotional well-being. Thus, under the statutory scheme governing postremoval placement decisions, a detriment finding can properly be supported by the emotional harm arising from the loss of sibling relationships even in the absence of the noncustodial parent's contribution to the detriment.

This statutory scheme is consistent with the focus in dependency law on the child, not the parent. (See *In re Joseph B., supra,* 42 Cal.App.4th at p. 900.) That is, once dependency jurisdiction is acquired because of the custodial parent's conduct, the court's inquiry shifts to a focus on the child's best interests, albeit with a preference towards parental reunification. In sum, although a jurisdictional finding is predicated on parental conduct, a detriment finding for purposes of deciding placement with a noncustodial, non-offending parent need not be.

b. *Evidence Presented*

Because the detriment need not be related to parental action and emotional harm is relevant to a detriment analysis, the court could properly

consider whether Luke and Lenay would suffer emotional harm if separated from Leanna and Lindsey. (Evid. Code, §§ 350, 351.) ■ A court's ruling under section 361.2, subdivision (a) that a child should not be placed with a noncustodial, nonoffending parent requires a finding of detriment by clear and convincing evidence. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1827 [46 Cal.Rptr.2d 198].) We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that that the children would suffer such detriment. (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 329 [79 Cal.Rptr.2d 922]; cf. *In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154 [94 Cal.Rptr.2d 693].) Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt. (*In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1205 [101 Cal.Rptr.2d 449].)

■ The record amply supports a finding that there was a high probability that moving to Ohio would have a devastating emotional impact on Luke and Lenay. They depended on their siblings for love, support, and security. Since their removal, their only request of the social worker was not to be separated. They cried and became depressed when she spoke with them about the possibility of separating. Luke did not want to be separated from his sisters, his mother, or other relatives in San Diego. He was extremely connected to them and could not "stand the thought of having to leave them." Lenay did not want to leave Lindsey or her mother, and especially did not want to leave Leanna, to whom she was extremely bonded.

Further, Luke and Lenay said they wanted to live in California after visiting with Jeffrey in Ohio. From this and the fact that Luke had previously expressed a wish to live with Jeffrey, the court could reasonably infer they found it difficult to be away from their siblings. Although a detriment finding may not be supportable based on their preferences alone, at their respective ages of 10 and eight, Luke's and Lenay's preferences may be considered. They have lived with Leanna their entire lives and with Lindsey for her entire life. Their lives were previously disrupted by dependency proceedings and they have come to rely on each other.

In addition, the social worker opined the children would suffer detriment if separated from their siblings. The social worker believed it would be detrimental for Lenay and Luke to live with Jeffrey in Ohio because they were very bonded with Leanna and Lindsey who were staying in California. The social worker was concerned they would "end up with some behaviors" if forced to go. Consistent with the social worker's opinion, a counselor at

the Polinsky Children's Center determined early on in the case that separation would be detrimental to the children.

Jeffrey asserts there was insufficient evidence of detriment because the siblings could stay in contact through telephone calls and occasional visits. However, the social worker believed the children needed to be with each other and telephoning would not be an adequate substitute. She also believed that therapy in Ohio would not address their concerns of being able to contact their siblings. The trial court could properly credit the social worker's assessments in this regard.

Jeffrey argues that the social worker's opinion did not provide sufficient evidence on the sibling issue, and that testimony from a qualified expert was necessary. Social workers are frequently recognized as experts in assessing risk and placement of children and selecting permanent plans for children. (See, e.g., *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654 [54 Cal.Rptr.2d 722]; *In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1420-1421 [35 Cal.Rptr.2d 162].) Although the social worker here was not formally qualified as an expert, she had been working with these children for four and one-half months, had observed them together on multiple occasions, and had frequently interviewed them. The social worker's interviews with and observations of the children and her ensuing opinion provided the court with sufficient information to render its ruling. In the case before us, expert opinion in addition to the social worker's opinion, although certainly helpful, was not essential.[8] (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 53 [82 Cal.Rptr.2d 426].)

Finally, we must defer to the trial court's factual assessments. (*In re Casey D., supra,* 70 Cal.App.4th at pp. 52-53.) "We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199 [23 Cal.Rptr.2d 482].) The record reveals Luke became very upset while testifying about where he wanted to live. The court commented the record would not come "close to revealing the depth of that young man's reaction to the prospect of being separated." The court believed these siblings' bond helped them survive and was much closer than in normal sibling relationships. The court's firsthand observations of Luke's demeanor was critical to its determination, and we do not reweigh the evidentiary value of those observations. Substantial evidence supports the court's finding that the children would suffer detriment if placed in Ohio with Jeffrey.

---

[8]Although we determine there is sufficient evidence here to support a detriment finding, when the issue before the court is whether a child will suffer detriment if separated from siblings, evidence from a psychologist would undoubtedly be probative.

II., III.\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The orders are reversed in part and the trial court is directed to hold a new dispositional hearing for the limited purpose of ordering an appropriate reunification plan for Jeffrey. In all other respects, the orders are affirmed.

McDonald, J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 16, 2003. Brown, J., did not participate therein.

---

\*See footnote 1, *ante*, page 1412.