94 Cal.Rptr.2d 693 (2000)
79 Cal.App.4th 1145
In re LUKAS B. et al., Persons Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Rungsun B., Defendant and Appellant.
No. B134685.
Court of Appeal, Second District, Division Four.
April 14, 2000.
*694 Harry Zimmerman, Covina, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd W. Pellman, County Counsel, and Pamela Soncini, Senior Associate County Counsel, for Plaintiff and Respondent.
*695 CHARLES S. VOGEL, P.J.

INTRODUCTION
Defendant Rungsun B. appeals from an order of the juvenile court terminating his parental rights to his children, Lukas B. and Angelina N., pursuant to Welfare and Institutions Code section 366.26.[1] Appellant contends the order must be reversed because he did not receive proper notice of a prior section 366.26 hearing. He also contends that there was no clear and convincing evidence presented that the children will likely be adopted, and that the juvenile court erred in terminating his parental rights because the children would benefit from continuing their relationship with appellant. We find no merit in appellant's contentions and therefore affirm the challenged order.

FACTUAL AND PROCEDURAL BACKGROUND
Lukas B., born in January 1994, and Angelina N., born in March 1995, came to the attention of the Department of Children and Family Services (the Department) when Angelina was born with a positive toxicology screen for amphetamines and methamphetamine. The children were detained in the home of their paternal grandmother. They were declared dependent children pursuant to section 300 in March 1995, based on sustained allegations that their mother was a frequent user of illegal drugs, their home was found to be filthy and unsanitary, and appellant's interest in and ability to care for them were unknown. Reunification services were ordered; appellant was ordered to attend parenting classes and was granted unmonitored visitation.
At the 12-month review hearing in July 1996, the court set a permanency planning hearing (§ 366.22) for October 1996. At the October hearing, which appellant did not attend but his counsel did, the Department reported that the children continued to reside with their paternal grandmother and were doing well in her care. Appellant had begun visiting the children once or twice a week but had not maintained contact with the Department nor completed a parenting class. The court found that return of the children to appellant would create a substantial risk of detriment, that appellant had not complied with the case plan, and that reasonable reunification efforts had been made. Reunification services were terminated and a section 366.26 hearing was set for February 1997. Notice to appellant was personally served at the paternal grandmother's address and then mailed to that address.
At the February hearing, which appellant did not attend, the court found that notice had not been given properly because the hearing location was stated incorrectly in the notice. The court continued the hearing to May 12, 1997. The paternal grandmother told a social worker in early January 1997 that appellant lived at her home; later in the month she twice said he did not live there but visited the children monthly. During a visit to the home, three-year-old Lukas told a social worker appellant lived with him and that a certain bedroom was appellant's. The paternal grandmother denied that appellant lived there and explained he had not yet removed his belongings from her home.
The Department personally delivered appellant's notice of the continued section 366.26 hearing to the paternal grandmother and then mailed appellant's notice to her address. She said she would give appellant the notice. According to her, appellant was in and out of the home and sporadically helped her with the finances.
Appellant did not attend the section 366.26 hearing on May 12, 1997. The court found reasonable efforts had been made, that appellant had failed to comply with the court-ordered programs, and that the appropriate plan for the children is adoption. A Judicial Council form order *696 and the minute order for the hearing indicate the court found by clear and convincing evidence that the children were likely to be adopted. While the Judicial Council form order indicates parental rights were not terminated, the minute order states that parental rights were terminated and the termination order stayed pending submission by the Department of a report regarding the home study of the paternal grandmother's home. However, the reporter's transcript does not contain any statements regarding termination of parental rights. The section 366.26 hearing was continued.
The Department had misgivings regarding the unsanitary condition of the paternal grandmother's home, her finances, and her parenting skills, and was continuing to work with her to improve the situation. The adoptive home study therefore was not completed. In April 1998, the paternal grandmother died, and the children were placed with their maternal great aunt and uncle, who were in the process of adopting Lukas and Angelina's younger half-brother, Donald.
In June 1998, appellant filed a section 388 petition for modification requesting that the children be placed with him. He stated in a declaration that from the beginning of the dependency case the children had been placed with him, in his home, and that the paternal grandmother had cared for them while he was at work. He claimed he had provided for all of them financially. The matter was set for adjudication.
The Department reported that the maternal great aunt and uncle wished to adopt Lukas and Angelina, and recommended that appellant's parental rights be terminated. The hearing on appellant's section 388 petition for modification and the section 366.26 hearing were continued numerous times.
In December 1998, the children told their caregiver and the social worker that appellant had sexually abused them at their paternal grandmother's house. They were seen by a doctor, who found no physical signs of penetration; they were also seen by a therapist and told her they had been sexually abused by appellant.
The Department's report for the March 1999 hearing stated that appellant had been having monitored visits with the children three times per week since January 1999. Lukas frequently acted sad or upset during the visits, and the social worker observed that appellant "constantly puts Lukas down." Several times Lukas said he did not want to live with or visit appellant. On the other hand, appellant and Angelina seemed to enjoy visiting together, and appellant paid much more attention to her during the visits. However, at home Angelina had begun frequently urinating on herself and at times would regurgitate when she was not ill. The court continued the order for monitored visitation three times per week.
On March 31,1999, the Department filed a section 342 petition setting forth the sexual abuse allegations against appellant.
Appellant filed an amended section 388 petition, declaring that the allegations of sexual abuse in the section 342 petition were false. He said the children's caregiver had fabricated the allegations in order to maintain custody of the children. Appellant also filed an order to show cause and declaration for contempt, claiming that the caregiver had denied him visitation with the children, in violation of the court's prior orders. The court rejected appellant's request to have the children interviewed by appellant's therapist, but restated its previous visitation order. The matter was continued for adjudication of the section 342 petition, the section 388 petition and OSC (order to show cause), and the section 366.26 hearing.
The Department continued to report that Lukas did not want to visit with appellant and was acting out during the visits, e.g., crying and retreating under a table or out of the room. Angelina often seemed to enjoy the visits but was still *697 urinating on herself and regurgitating at home.
At the hearing on August 18, 1999, the court agreed to first consider appellant's section 388 petition and the issues pursuant to section 366.26, holding in abeyance the section 342 petition regarding allegations of sexual abuse. The court took judicial notice, without objection, of the finding reflected in the minute order from May 12, 1997, that the children had been found likely to be adopted; the court and counsel made note of the discrepancy between the minute order and Judicial Council form order as to whether parental rights had been terminated and the order stayed, or not terminated at all.
After hearing testimony from appellant that he had lived with and cared for the children from 1995 until they were removed in April 1998 after the paternal grandmother's death, and after hearing argument from counsel, the court found there was no clear and convincing evidence of a change in circumstances, or that the best interests of the children would be served by granting appellant's section 388 petition. The section 388 petition was denied, and the court proceeded to consider the section 366.26 issues.
No further testimony was given, but the court heard argument from counsel. Thereafter, the court found by clear and convincing evidence that the children were likely to be adopted, stating, "[t]hat prong was met back in May of '97 and continues to be met to this date."
The court then found that appellant had maintained regular visitation with the children, but had not shown that the children would benefit from continuing the relationship with appellant. The court terminated appellant's parental rights and transferred custody to the Department for purposes of adoptive planning and placement.
This appeal followed.

DISCUSSION

I. Notice for the May 12, 1997, Hearing
Appellant argues for the first time on appeal that he did not receive proper notice of the first section 366.26 hearing held in this case on May 12, 1997, at which the court may or may not have made a finding that the children were likely to be adopted. He contends that notice was improper because there was some question as to whether or not he lived at the same address as the children and the paternal grandmother, where notice was served personally and by mail. He further contends that the paternal grandmother was not competent to receive the notice because a language barrier existed, her primary language being Thai.
Appellant's assertion of improper notice fails for a number of reasons. He waived the issue by failing to raise it below. Appellant raises this contention regarding improper notice for the first time on appeal. It runs directly contrary to statements he made below on numerous occasions, including under oath, that he lived at the same address as the paternal grandmother until her death in April 1998. The novel contention, stressed in appellant's reply brief, that the paternal grandmother was incompetent to receive notice, was also waived by failure to bring it to the court's attention below. In any event, there is nothing in the record to support appellant's contention that a language barrier existed between the social workers and the paternal grandmother such that she was incompetent to receive notice.
Finally, we note that appellant's contention regarding improper notice is only considered significant by appellant if we conclude that an adoptability finding was made at the May 1997 hearing. We conclude, however, that we need not decide whether or not the court found the children likely to be adopted at that hearing. The critical hearing at issue on this appeal occurred in August 1999; at that time the *698 juvenile court made the finding based on then current evidence that the children were likely to be adopted. We next address appellant's contention that the adoptability finding was not supported by substantial evidence.

II. Termination of Parental Rights
"At a hearing under section 366.26, the court is required to select and implement a permanent plan for a dependent child. Where there is no probability of reunification with a parent, adoption is the preferred permanent plan. (In re Edward R. (1993) 12 Cal.App.4th 116, 122 [15 Cal. Rptr.2d 308]; In re Heather B. (1992) 9 Cal.App.4th 535, 546 [11 Cal.Rptr.2d 891]) In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated. (§ 366.26, subd. (c)(1).) The parent then has the burden to show termination would be detrimental to the minor under one of four specified exceptions. (§ 366.26, subd. (c)(1)(A)[-](D).) In the absence of evidence termination would be detrimental to the minor under one of these exceptions, the court `shall terminate parental rights....' (§ 366.26, subd. (c)(1), italics added; see also In re Matthew C. (1993) 6 Cal.4th 386, 392 [24 Cal.Rptr.2d 765, 862 P.2d 765] [where minor adoptable and none of the four statutory exceptions would result in detriment to minor, decision to terminate parental rights will be relatively automatic].)" (In re Tabatha G. (1996) 45 Cal. App.4th 1159, 1164, 53 Cal.Rptr.2d 93.)

A. Substantial Evidence Supports the Trial Court's Finding That the Children Are Likely to Be Adopted
Appellant argues that the record is devoid of substantial evidence to support the trial court's finding that Lukas and Angelina are likely to be adopted. Appellant did not raise the issue of the children's adoptability at the section 366.26 hearing. Respondent urges us to therefore consider the issue waived, and authority exists which would support such a resolution of the matter. (See, e.g., In re Aaron B. (1996) 46 Cal.App.4th 843, 846, 54 Cal. Rptr.2d 27; In re Crystal J. (1993) 12 Cal.App.4th 407, 411-412, 15 Cal.Rptr.2d 613; In re Urayna L. (1999) 75 Cal. App.4th 883, 886, 89 Cal.Rptr.2d 437.) However, we will consider the issue of adoptability, if only to demonstrate that trial counsel was not ineffective for failing to argue the issue. (See, Deborah S. v. Superior Court (1996) 43 Cal.App.4th 741, 748, fn. 5, 50 Cal.Rptr.2d 858.)
We review the factual basis of a termination order to determine whether the record contains substantial evidence from which a reasonable trier of fact could find a factual basis for termination by clear and convincing evidence. (In re Baby Boy L. (1994) 24 Cal.App.4th 596, 610, 29 Cal. Rptr.2d 654.) In this case, we find that the record before us contains substantial evidence supportive of the conclusion that it is likely the children will be adopted. (§ 366.26, subd. (c)(1).)
"The issue of adoptability posed in a section 366.26 hearing focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.] Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent `waiting in the wings.' [Citations.]" (In re Sarah M. (1994) 22 Cal.App.4th 1642, 1649, 28 Cal. Rptr.2d 82, italics omitted.) "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent or by some *699 other family." (Id. at pp. 1649-1650, 28 Cal.Rptr.2d 82, italics in original.)
Appellant contends that at the August 1999 hearing at which parental rights were terminated, "the evidence cast doubt on the adoptability of the minors.... Their recent behavior, which included Angelina's urinating on herself and regurgitating for no apparent reason, militated against an adoptability finding."
While the children had begun exhibiting behavioral problems, the appearance of these problems seems to have corresponded with the increase in visitation with appellant. In any event, there is no indication the behavioral problems were so severe as to make the court's finding of adoptability unsupported. The children's maternal great aunt and uncle were committed to adopting Lukas and Angelina, as well as their brother, and were not dissuaded by the onset of the children's behavioral problems.

B. The Trial Court Did Not Err in Finding the Children Would Not Benefit from a Continued Relationship with Appellant
Appellant further contends that the court erred in ordering the children into adoption in light of appellant's relationship with them, which he argues satisfied the requirements of the "benefit-contact" exception to termination, set forth in section 366.26, subdivision (c)(1)(A).
The relevant statutory language, section 366.26, subdivision (c)(1)(A) provides: "(c)(1) If the court determines ..., by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.... A finding ... under Section 366.21 or 366.22, that the court has continued to remove the child from the custody of the parent or guardian and has terminated reunification services, shall constitute a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."
"Although the kind of parent/child relationship which must exist in order to trigger the application of section 366.26, subdivision (c)(1)(A) is not defined in the statute, it must be sufficiently strong that the child would suffer detriment from its termination." (In re Beatrice M. (1994) 29 Cal.App.4th 1411, 1418, 35 Cal.Rptr.2d 162.) "`In the context of the dependency scheme prescribed by the Legislature, we interpret the "benefit from continuing the [parent/child] relationship" exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' (In re Autumn H. [(1994)] 27 Cal.App.4th 567, 575 [32 Cal.Rptr.2d 535].)" (In re Beatrice M., supra, 29 Cal.App.4th at p. 1418, 35 Cal. Rptr.2d 162.)
The record before us indicates that appellant maintained regular contact with the children, at least from January 1999 until the time of the section 366.26 hearing in August 1999. However, the Department continuously reported that the visits did not go well. Lukas repeatedly expressed that he did not want to visit appellant, and he was often very unhappy and disruptive during the visits, necessitating that the visits end early. Angelina appeared to *700 enjoy the visits more, but also said at times she did not want to visit appellant and made derogatory statements to appellant. At age four-and-a-half, she had begun acting out at home, frequently urinating on herself and regurgitating.
The exception referred to in subdivision (c)(1)(A) "`applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent.' (In re Autumn H., supra, 27 Cal.App.4th at p. 575 [32 Cal.Rptr.2d 535].)" (In re Beatrice M., supra, 29 Cal. App.4th at p. 1419, 35 Cal.Rptr.2d 162.) Based on the evidence presented in the record, we conclude that the trial court did not err in finding that the exception set forth in section 366.26, subdivision (c)(1)(A), does not apply in this case. The Legislature has determined that "guardianship is not in the best interests of children who cannot be returned to their parents. These children can be afforded the best possible opportunity to get on with the task of growing up by placing them in the most permanent and secure alternative that can be afforded them[: adoption.]" (In re Beatrice M., supra, 29 Cal.App.4th at p. 1419, 35 Cal.Rptr.2d 162.)
There is no overriding consideration in this case requiring that guardianship be preferred over adoption merely because guardianship would avoid a permanent termination of appellant's parental rights. (In re Ronell A. (1996) 44 Cal.App.4th 1352, 1368-1370, 52 Cal.Rptr.2d 474; In re Beatrice M., supra, 29 Cal.App.4th at p. 1419, 35 Cal.Rptr.2d 162.) "A guardianship is `not irrevocable and thus falls short of the secure and permanent placement intended by the Legislature.' [Citation.]" (In re Teneka W. (1995) 37 Cal.App.4th 721, 728, 43 Cal.Rptr.2d 666.) Appellant's parental rights were properly terminated.

DISPOSITION
The order is affirmed.
EPSTEIN, J., and BERLE, J.[*], concur.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code.
[*] Assigned by the Chairperson of the Judicial Council.