Filed 7/24/13  In re T.T. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re T.T., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.T.,<br><br>Defendant and Appellant. | C072972<br><br>(Super. Ct. No. JD231003) |

Appellant C.T., the mother of the minor T.T., appeals from the juvenile court's orders terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  She contends there is insufficient evidence of the minor's adoptability.  We affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

In September 2010, the minor (born April 2008) lived with mother, his father T.T., and his five half siblings. Mother told the police the eldest child, 14-year-old D.P., was out of control and she wanted the police to take him away. The children were taken into protective custody after mother admitted beating them with an electrical cord and officers saw old and new marks on the children consistent with them being whipped by an electrical cord. Several of the children told social workers that mother and minor's father beat the children with belts, a broom, and extension cords. Mother also bit D.P. on the shoulder.

Mother said she returned home and found it was a mess, so she asked D.P. to clean up. When D.P. "got in [her] face," she hit him with an extension cord and bit him so he would get off of her. Mother weighed 260 pounds and D.P. weighed about 140 pounds. Mother's extensive child welfare history included 20 prior child welfare referrals, and she had her reunification services terminated for several children in a prior dependency proceeding.

In September 2010, the Sacramento County Department of Health and Human Services (DHHS) filed a dependency petition alleging jurisdiction based on serious physical harm and failure to protect. (§ 300, subds. (a), (b).) The minors were detained later that month.

The minor and his half sister C.A. (born September 2005) were placed in a residential home in October 2010. The minor hit and bit other children at his initial placement; C.A. initially pulled hair and bit other children at the placement, but her behavior gradually improved.

DHHS filed an amended petition in January 2011, providing additional details of the physical abuse. The amended petition was sustained and reunification services were denied (§ 361.5, subd. (b)(6), (10), & (13)) in March 2011.

2

DHHS reported the minor was meeting most of his developmental milestones as of July 2011. The minor and C.A. were in a foster home in which the caretaker had not expressed an interest in adoption. C.A. had a history of assaultive and destructive behavior at school, as well as lying and storytelling behaviors at home. DHHS was assessing relatives for possible adoptive placement for both children.

At the July 2011 selection and implementation hearing, the juvenile court found the minor and C.A. had "a high probability for adoption, but [were] difficult to place for adoption" because they were part of a sibling group. The hearing was continued to give DHHS time to evaluate relatives for possible placement.

The minor and C.A. began visiting a maternal great uncle after the July 2011 hearing. The visits were positive and the maternal great uncle and his wife were licensed foster parents. In November 2011, the couple informed DHHS that they were no longer interested in adoption. Since the minor and C.A. were a sibling set and C.A. had behavioral problems, DHHS assessed the children as specifically adoptable rather than generally adoptable.

At a December 2011 hearing, the juvenile court found the minor was adoptable, but did not terminate parental rights and continued the case to December 2012.

DHHS reported in July 2012 that the minor and C.A. were doing well in foster care. DHHS recommended C.A. remain out of home with the goal of returning her to her father, while adoption was still the goal for the minor. The juvenile court set adoption as the permanent plan for the minor and set a section 366.26 hearing in December 2012.

DHHS summarized the minor's placement history in the December 2012 selection and implementation hearing report. The minor and C.A. were first placed with a foster family for two years. The family then gave notice for C.A. but not for the minor. There were problems with the foster family as well; they failed to keep up on immunization, did not follow up on dental work for the minor, and did not enroll him in a prekindergarten program. The minor and C.A. were then moved to a temporary respite care home, but the

3

placement failed due to C.A.'s behavior. The children were then placed together in another foster home, but the family gave notice after two days due to C.A.'s acting out, running away from home, refusal to go to school, defiance with the foster parent, and aggression towards the minor. The children were then given separate placements after DHHS determined they were on different case plans, adoption for the minor and reunification with her father for C.A. The minor was given another placement but was removed after an emergency response referral on that home. He was then placed in a temporary foster home while he started visits with a potential adoptive home.

The minor was in good health, developmentally on track, and DHHS found a potential adoptive home. The family had an adoption home study, and the minor had three preplacement visits with them. He was doing exceptionally well in his placement without C.A. DHHS found the minor's likelihood of adoption was excellent and recommended terminating parental rights.

At the December 2012 section 366.26 hearing, the parties informed the juvenile court that the minor was now living with the prospective adoptive family. Testifying, mother requested long term placement so she could work on herself and then be ready to parent the minor. She did not think the minor was adoptable as C.A. had a negative reaction to the minor's possible adoption, and the minor was more self-reliant than her other children.

The juvenile court found the minor is likely to be adopted. In support of its ruling, the juvenile court noted the minor was healthy, free of emotional problems, and developmentally on track. His multiple placements were due to C.A.'s behaviors or failings of the caretakers, or both. Finding no exception to the legislative preference for adoption, the juvenile court terminated parental rights.

DISCUSSION

Mother contends the orders terminating parental rights must be reversed because there is insufficient evidence to support the juvenile court's finding that the minor was likely to be adopted. We disagree.

An order terminating parental rights must be affirmed if it is supported by substantial evidence. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154.) "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. [Citations.]" (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

" 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child. . . . The permanent plan preferred by the Legislature is adoption. [Citation.]' " (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.) "In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated. [Citation.]" (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164; § 366.26, subd. (c)(1).)

"The issue of adoptability posed in a section 366.26 hearing focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.] Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent 'waiting in the wings.' [Citations.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649, italics omitted.) On the other hand, "the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a

5

reasonable time either by the prospective adoptive parent or by some other family." (*Id.* at pp. 1649-1650, italics omitted.)

Mother asserts the minor, who was nearly five years old at the time of the section 366.26 hearing, was part of a sibling set and deemed by DHHS to be specifically adoptable. According to mother, DHHS did not show successful prospective adoptive placement, but instead presented three "pre-placement visits with a prospective adoptive parent who wanted to adopt the minor and none of his siblings." Noting the minor's numerous placements during the dependency, she concludes that "[t]his did not constitute clear and convincing evidence of adoption."

The issue of specific adoptability arises in those "cases [in which] a minor who ordinarily might be considered unadoptable due to age, poor physical health, physical disability, or emotional instability [but] is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child." (*In re Sarah M., supra*, 22 Cal.App.4th at p. 1650.) DHHS asserted in the November 2011 report that the minor and C.A. were specifically adoptable because they were a sibling set and C.A. had behavioral problems. The condition which led to this assessment no longer existed when parental rights were terminated, as the minor was separated from his sister and doing well in his new placement. The minor was comparatively young, developmentally on track, and physically and emotionally healthy at the time of the last section 366.26 report. These new circumstances therefore allowed DHHS to change its assessment and conclude the minor was likely to be adopted.

The only impediment to the minor's chances for adoption was the problems involving his sister C.A., which disappeared when the children were placed separately. While mother notes the minor had spent his entire life with C.A., she does not raise the sibling bond exception to adoption. (§ 366.26, subd. (c)(1)(B)(v).) The existence of any bond between the two siblings is therefore irrelevant to the issue of the minor's adoptability.

The juvenile court did not find the minor to be specifically rather than generally adoptable, and there is no evidence to support such a finding. There were no characteristics of the minor which create impediments to adoption, and he was living with a prospective adoptive family at the time of the section 366.26 hearing. This constitutes substantial evidence supporting the juvenile court's finding that the minor was likely to be adopted.

## DISPOSITION

The juvenile court's orders terminating parental rights are affirmed.


    BLEASE    , Acting P. J.


We concur:


    HULL    , J.


    BUTZ    , J.