Filed 7/29/13  In re A.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | C072711 |
| Plaintiff and Respondent, | (Super. Ct. No. J04294) |
| v. | |
| T.S., | |
| Defendant and Appellant. | |

T.S. (mother) appeals from the juvenile court's order terminating her parental rights as to minors A.S. and T.L.  (Welf. & Inst. Code, [1] § 366.26.)  She contends the record does not show by clear and convincing evidence that the minors are adoptable. Disagreeing, we shall affirm.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The minors were originally detained in 2006, when they were four and two years old respectively, due to mother's mental problems.[2] They were placed in foster care and mother received reunification services.

Before disposition, T.L. was diagnosed with bilateral aniridia (ill-formed or missing irises) and a congenital cataract in his right eye. A.S. had no known physical or emotional problems.[3] A status review report filed in 2007 by the San Joaquin County Human Services Agency (the Agency) opined that both minors were adoptable. The minors were bonded with each other.

The juvenile court returned the minors to mother's custody under a family maintenance plan in 2008. In June 2009, the court terminated jurisdiction.

In September 2010, the Agency filed a new section 300 petition, alleging that mother, who appeared to be experiencing paranoid delusions again, was arrested and jailed for violating court orders related to the minors. In January 2011, the juvenile court found the allegations of the petition true, set a dispositional hearing, and ordered psychological evaluations of mother.

In its disposition report, filed in May 2011, the Agency recommended denying reunification services to mother because the psychological evaluations had concluded she suffered from severe mental illness.

The minors were in their third placement. T.L., now seven years old, exhibited social, emotional, and intellectual delays; he struggled in school and had difficulty interacting with other children. Recently he had displayed anger and "inappropriate

---

[2] A.S.'s father, K.W., is deceased. T.L.'s father, C.L., is not a party to this appeal.

[3] A.S. was later treated for Attention Deficit Disorder.

2

behaviors such as smearing feces and crawling on the floor making strange sounds." These behaviors had decreased in his current placement.

A.S., now nine years old, was physically healthy, emotionally stable, interacted well with her foster family and classmates, and showed no intellectual delays.

The minors were still placed together and bonded with each other. "[D]ue to behaviors and medical conditions," the minors were not currently classified as adoptable; this descriptor presumably referred to T.L., given his history. The concurrent plan was for a planned permanent living arrangement. At the dispositional hearing in July 2011, the juvenile court denied reunification services to mother.

A December 2011 status report opined the minors were again adoptable. T.L.'s behavior and schoolwork were much improved, he could sleep without medication, and he did not need special services; he had been referred to a surgeon for consultation about surgery on his right eye. A.S. continued to show no problems of any kind.

A section 366.26 report filed in May 2012 recommended termination of parental rights and adoption. The minors, now 10 and eight years old respectively, continued to do well and appeared happy; T.L. did not exhibit the behavioral concerns previously noted. A maternal cousin was willing to adopt the minors, and they would transition to her home soon, but were waiting for the school year to end to transition. The cousin had been assessed for placement beginning in late 2011 and had been visiting with the minors since early March.

The cousin, a licensed vocational nurse, had successfully raised three children, two of whom still lived with her. She understood the responsibilities of adoption. Her home had been approved as an adoptive home. The minors were happy to be moving there.

A status review report filed in June 2012 stated that T.L. had lost vision in his right eye and had glaucoma in his left eye; surgery on the right eye had been ruled out due to the severity of his condition. However, he was adjusting well in school and needed no specialized services. He and A.S. had been placed with the cousin since June

1, 2012. The minors' placement was adequate and appropriate, and adoption remained the concurrent plan.

The juvenile court held a contested section 366.26 hearing in November 2012. A.S. testified that she wanted to continue living in the cousin's home until she became an adult. T.L. testified that he liked living there and wanted to continue doing so, replying "[m]aybe" when asked if he wanted to do so "forever."

Mother's counsel argued against termination of parental rights because mother had a significant bond with the minors and did want them to be adopted. Counsel did not argue that the minors were not adoptable.

The juvenile court found by clear and convincing evidence that the minors were likely to be adopted. Finding no applicable exception to adoption, the court terminated parental rights.

## DISCUSSION

Mother contends the juvenile court erred by terminating her parental rights in the absence of clear and convincing evidence the minors were adoptable.

"If the court determines . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." (§ 366.26, subd. (c)(1).)

We review the juvenile court's finding that the child is likely to be adopted within a reasonable time under the substantial evidence standard, giving it the benefit of every reasonable inference and resolving any evidentiary conflicts in favor of affirming. (*In re I.I.* (2008) 168 Cal.App.4th 857, 869.) That is, we must determine whether the record contains substantial evidence from which the court could find clear and convincing evidence that the child was likely to be adopted within a reasonable time. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1232.)

Although mother did not argue at the section 366.26 hearing that the minors were not adoptable, we consider her claim that there was insufficient evidence of adoptability

4

because insufficient evidence claims are not forfeited by the failure to raise them below. (*In re Brian P.* (2002) 99 Cal.App.4th 616, 623; *In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561.)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child; therefore, a finding of adoptability does not require that the child already be in a prospective adoptive home. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) But the fact that a prospective family has expressed interest in adopting the child is evidence that the child is likely to be adopted by that family or some other family in a reasonable time, even if ultimately the child does not stay in that home. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154; *In re Sarah M., supra*, 22 Cal.App.4th at pp. 1649-1651.)

Here, the Agency had found consistently since December 2011, almost a year before the section 366.26 hearing, that the minors were adoptable. Further, they were in a prospective adoptive home, where they wanted to stay. These facts alone constitute substantial evidence of adoptability.

Mother points to the Agency's earlier finding that the minors were unadoptable due to "behaviors and medical conditions." But, as the Agency's later reports explained, T.L.'s behavioral improvements had eliminated the main basis for this finding. His medical condition evidently did not deter his cousin from wanting to adopt him. And though mother asserts that this condition renders T.L. unadoptable, she cites no authority to support this assertion, and we see none.

We note that mother concedes the minors "might possibly be specifically adoptable." We agree that the record supports this classification of the minors as well. Although mother argues that the minors' placement with the cousin is "extraordinarily recent and has not withstood the test of time," she presents no authority supporting her assertion that--after the minors had been visiting their cousin from March 2012 and living with her from June 2012--at the hearing in November 2012, after reading the reports and

5

hearing from the minors, the juvenile court acted prematurely in terminating parental rights. Substantial evidence supports the juvenile court's finding of adoptability.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                               DUARTE , J.


We concur:


MAURO , Acting P. J.


HOCH , J.

6