Filed 6/30/15  In re M.P. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re M.P., a Person Coming Under the Juvenile Court Law. | C078104 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>KIMBERLY P.,<br><br>        Defendant and Appellant. | (Super. Ct. No. JD231117) |

Mother, Kimberly P., appeals the juvenile court's orders finding the minor adoptable and terminating her parental rights.  She contends there is no substantial evidence to support the finding the minor was adoptable.  We disagree and affirm.

1

BACKGROUND

In September 2010, mother began participating in a residential drug treatment program. She was scheduled to finish the program in December 2010 and then move to transitional housing. In November 2010, the day before the minor was born, mother tested positive for amphetamine during a preoperative appointment. Two days later, the minor and mother tested negative for illicit substances. The Sacramento County Department of Health and Human Services (Department) filed a nondetaining Welfare and Institutions Code section 300[1] petition alleging the minor's half sibling had been abused or neglected as a result of mother's lengthy substance abuse and domestic violence in the home, mother had not been offered reunification services based on her history, and the abuse of this half sibling put the minor at substantial risk of harm. (§ 300, subd. (j).) The juvenile court ordered the minor to remain in the care and custody of mother, under the Department's supervision.

Mother and the minor continued to live at the residential treatment facility, and were doing very well there. The counselor at the treatment facility was concerned about mother's relationship with father, and father's erratic behavior. Mother acknowledged the domestic violence in her relationship with father, but minimized both its frequency and severity. Mother was also participating in parenting education classes, nutrition education, domestic violence and related trauma education, and individual counseling.

The juvenile court found the allegations of the petition true, sustained the petition, and adjudged the minor a dependent child. The juvenile court ordered the minor to remain placed with mother, visitation for father, and ordered services for mother. In separate proceedings, mother's parental rights to the half sibling were terminated in April 2011. As to the minor in these proceedings, by November 2011, mother had successfully

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

completed services and the minor was doing well.  The juvenile court terminated dependency jurisdiction and awarded mother sole legal and physical custody.

In response to an emergency referral, the social worker visited mother's home in May 2014.  The referral alleged mother was using drugs and prostituting with the minor in the home.  As a result of the home visit, mother agreed to take a drug test and then tried to use an apparatus to give a false drug test.  She admitted she had used methamphetamine a few days earlier.  Mother refused informal supervision.  On May 29, 2014, the Department filed a section 300 petition alleging mother's substance abuse rendered her unable to provide regular care for the minor (§ 300, subd. (b)), and mother's parental rights to the minor's half sibling had been terminated in part based on mother's substance abuse problems (§ 300, subd. (j)).  The Department placed the minor in protective custody.  On June 3, 2014, the juvenile court ordered the minor detained.

The minor was detained with a nonrelative extended family member.  The caregivers had known the child since she was 10 months old and had cared for her on multiple occasions.  They were uncertain whether they would be interested in providing permanency for the child, but might consider it.  The minor was dressed appropriately and had good hygiene.  She had a good appetite and slept well.  The caregiver expressed concern about some behaviors such as running and hugging strangers or asking if they were going to take her away.  Following a contested hearing, the juvenile court found the allegations of the petition true and adjudged the minor a dependent child.  The juvenile court denied mother and father reunification services.

In August 2014, the caregiver reported the minor was acting out sexually.  She pulled down a boy's pants, and told another child in the home to remove her diaper and she would lick her.  The minor admitted giving three hickeys to another child in the home.  The caregiver reported the minor had been asking other children to play sexual games with her and had recently asked an " 'eight year old boy on the playground if he knew you could put a boy's penis in your mouth and suck on it if you are playing the

3

diaper game.' " The minor wanted to play the " ' "diaper game" where she takes off undergarments and wants people to touch her under the blanket.' " The caregiver said the minor reported " ' "grandpa" ' " had touched her on the thigh and her mother told him not to touch " ' "her baby." ' " Based on this behavior, the Department suspected the minor had been molested. In September 2014, the caregiver requested the minor be removed from the home due to the sexualized behavior.

Toward the end of November, the minor started behaving aggressively toward other children in the home, including biting or pushing them. The foster parent was able to easily redirect her. The current foster parent loved the minor, but was not interested in a adopting her.

By the December 2014 section 366.26 hearing, the social worker reported the minor had an elevated body mass index, but her previously diagnosed asthma was under control. Her physical, social, and emotional development were on schedule. She sleeps through the night and eats well. A psychiatrist recommended the minor be referred to an occupational therapist, based on concerns about her fine motor coordination, but the minor's teacher had no such concerns. The minor did well in class with her teacher and peers. However, she had to be redirected often to keep her hands to herself, and not hug or touch other students. The minor was described as talkative, polite, and responsive. She easily followed household rules and enjoyed attending school.

On December 1, 2014, the minor met with an adoption home study approved family, who was interested in adopting her. The minor had two visits with the family. The family played with the minor and enjoyed her company. They were eager to continue visits and eventually adopt her. The prospective adoptive family had two parents and no other children in the home. They were aware of the minor's history and the legal and financial responsibilities associated with adoption. The social worker concluded it was highly likely the minor would be adopted if parental rights were terminated. "She is young and healthy, and though there are behavioral concerns

4

regarding sexualized acting out, a carefully matched adoption homestudy approved family has been identified . . . ."

The juvenile court found the minor likely to be adopted, terminated parental rights, and selected adoption as the appropriate permanent plan.

DISCUSSION

Mother contends the evidence was insufficient to support a finding the minor was adoptable. Specifically, she argues there was insufficient evidence the minor was generally adoptable. Rather, mother claims the minor was only considered adoptable because a family, who had only visited with her a few times, was interested in adopting her. And, interest alone is not enough to find clear and convincing evidence. We disagree.

" 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child. . . . The permanent plan preferred by the Legislature is adoption.' " (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.) "In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated." (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164; § 366.26, subd. (c)(1).)

"The issue of adoptability posed in a section 366.26 hearing focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) "A child's young age, good physical and emotional health, intellectual growth and ability to develop interpersonal relationships are all attributes indicating adoptability." (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1562.) "[G]enerally, the present existence or nonexistence of prospective adoptive parents is, in itself, not determinative, it is a factor in determining whether the child is adoptable." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400.) However, "[a] prospective adoptive

5

parent's . . . interest in adopting is evidence that the child's age, physical condition, mental state, and other matters relating to the child are not likely to discourage others from adopting the child." (*Ibid.*) "In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*In re Sarah M*., at pp. 1649-1650.)

We review a finding of adoptability for substantial evidence. (*In re Lukas B*. (2000) 79 Cal.App.4th 1145, 1154.) "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.)

The social worker concluded it was highly likely the minor would be adopted. The minor is young, only four years old, and in good physical health. Her physical, emotional, and social development is on schedule. She sleeps through the night and eats well. She is talkative and polite, does well in class, and gets along with her teachers and peers. She easily follows rules and enjoys school. She has exhibited some aggressive behavior, but is easy to redirect. She has also exhibited some sexualized behavior. After the September report, there were no additional reports of sexualized behavior by the minor. The prospective adoptive parents were aware of these problems, and not dissuaded from their interest in adopting her. During visits, the prospective adoptive family enjoyed her company. Despite the behavioral concerns, the prospective adoptive family was eager to adopt the minor. This is sufficient evidence that the minor is adoptable. (*In re Jeremy S*. (2001) 89 Cal.App.4th 514, 523-525, disapproved on other grounds in *In re Zeth S*. (2003) 31 Cal.4th 396, 413-414.)

DISPOSITION

The orders of the juvenile court are affirmed.


       BLEASE       , Acting P. J.


We concur:


    MAURO       , J.


    RENNER      , J.

7