Filed 2/10/16  In re Alexander C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

|  |  |
|---|---|
| In re ALEXANDER C. et al., Persons Coming Under the Juvenile Court Law. | C079460 |
| NEVADA COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>S.S.,<br><br>        Defendant and Appellant. | (Super. Ct. Nos. J09341, J09342) |

S.S., mother of the minors, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395 [further undesignated statutory references are to the Welfare and Institutions Code].)  Mother contends there was insufficient evidence to support the juvenile court's finding that the minors were likely to be adopted in a reasonable time and the juvenile court erred in designating the current caretaker as a prospective adoptive parent.  We affirm.

1

FACTS

In August 2014, the Nevada County Human Services Agency (Agency) filed a petition to remove the minors, Alexander C., age 11, and Andrew C., age eight, from mother's custody due to her neglect of the minors resulting from her severe substance abuse problems. Mother had reunified with the minors in a prior dependency for the same problems in 2011. The court ordered the minors detained and sustained the petition.[1]

The disposition report stated the minors had been in a temporary placement and were now in a foster home which was not a concurrent placement. Both minors were displaying stress behaviors including incontinence and encopresis and were referred to therapy. Visits raised concerns about mother's ability to parent. The Agency recommended bypassing services for both parents. At the contested disposition hearing in October 2014, the court adopted the recommendation, set a section 366.26 hearing, and decreased visits to once a week.

The Agency's report in January 2015 for the section 366.26 hearing stated Alexander had made progress with his incontinence and was behaving in more age-appropriate ways, although his emotional control was tenuous at times. Andrew's encopresis had resolved, although he continued to have some behavioral problems which were decreasing over time. The minors had been in a total of three placements: The first was a one-week emergency placement when first removed; the second was a foster placement where they remained until early January 2015 when the family gave notice; and the third was the current placement which had previously provided respite care. The minors were adjusting well to the new placement and improving in all areas. The foster family agency had some unspecified concerns about the current family adopting the

---

[1]    The minors' older sister, Sa.S., was not detained as she was living on her own and was not at risk from mother's conduct.

2

minors.  The Agency concluded the minors needed permanency and that family members were not appropriate placements.  The court continued the section 366.26 hearing for the state adoptions report and suspended mother's visits as detrimental to the minors.

The current foster mother filed an information form in March 2015 reporting that the state adoptions worker had traumatized the minors by telling them they would not be adopted by the foster mother.  The foster mother stated that the minors were happy in her care and wanted to stay there.  The foster mother also filed a declaration stating she was willing to adopt the minors.

The Agency filed an addendum to the January report and attached the state adoptions assessment.  The state adoptions worker assessed a paternal relative for placement without speaking with the current caretaker, and concluded the relative placement was suitable for adoption.

A second addendum provided a declaration by the minors' older sister, Sa.S., who explained that the minors had been "cornered" by the state adoptions worker into choosing a relative placement.  Sa.S. noted that the relatives in question had shown no interest in the minors since their removal from the home in 2014 and she was concerned that the relatives would turn the minors over to the father, who is abusive.  Sa.S. believed that the current placement was best for the minors and that another move would be detrimental to them.

The Agency filed a third addendum in April 2015 and attached a second state adoptions assessment, which discussed the suitability of the current caretaker as an adoptive placement.  The assessment concluded that the current caretaker was a suitable adoptive placement and that the minors were likely to be adopted by the current caretaker.

The contested section 366.26 hearing was held in early May 2015.  Minors' counsel asked that the current caretaker be designated the prospective adoptive parent.  Father's counsel objected on the grounds that the relative assessment was not complete.

Mother's counsel entered no objection to the request, instead discussing the parameters of a possible final visit, a bonding study that had been completed, and Mother's preference for guardianship with the current caretaker over adoption. The adoptions worker indicated that it was unlikely the relatives would qualify as an adoptive placement. The court found it was likely the minors would be adopted, terminated parental rights, and identified the permanent plan as placement with the current caretaker with the specific goal of adoption. Minors' counsel asked for clarification on the request for prospective adoptive parent status. The court indicated it had addressed that issue in identifying the permanent plan and that was enough to designate the current caretaker as the prospective adoptive parent.

DISCUSSION

I

Mother argues substantial evidence does not support the juvenile court's finding that the minors were likely to be adopted. Mother contends that the minors' ages and multiple placement changes following removal suggested that adoption was not likely.

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence -- that is, evidence which is reasonable, credible and of solid value -- to support the conclusion of the trier of fact. (*In re Angelia P*. (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination, we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.)

4

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.  The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted."  (§ 366.26, subd. (c)(1).)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child.  (*In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649.)  "[T]here must be convincing evidence of the likelihood that adoption will take place within a reasonable time."  (*In re Brian P*. (2002) 99 Cal.App.4th 616, 624.)  The fact that a prospective adoptive family is willing to adopt the minor is evidence that the minor is likely to be adopted by that family or some other family in a reasonable time.  (*In re Lukas B*. (2000) 79 Cal.App.4th 1145, 1154.)

At the time of the hearing the minors were ages 11 and nine.  When they were first placed in foster care, both minors displayed stress-related behavioral problems.  However, neither age nor earlier behavioral problems were a factor in determining whether the minors in this case were likely to be adopted.  The behavioral problems had largely dissipated and the minors were otherwise healthy, happy members of their foster family.  The minors wanted to remain in the current foster home and be adopted.  Further, in addition to the current caretaker's willingness to adopt, a relative family also expressed interest in adopting the minors.  Ample evidence supported the juvenile court's determination that the minors were likely to be adopted in a reasonable time.

## II

Mother argues the juvenile court erred in designating the current caretaker as a prospective adoptive parent because the caretaker did not meet the criteria for that designation, in part, because the minors had not been in her care for six months.

5

Father objected to the designation on other grounds.  Mother did not object to the designation on any grounds and particularly not on the ground that the current caretaker did not meet the criteria to be designated a prospective adoptive parent.  Mother has forfeited the issue for failure to object in the trial court.  (*In re Christopher B*. (1996) 43 Cal.App.4th 551, 558; *In re Dakota S*. (2000) 85 Cal.App.4th 494, 501-502.)

DISPOSITION

The orders of the juvenile court are affirmed.


                       NICHOLSON   , Acting P. J.


We concur:


    ROBIE     , J.


    MAURO    , J.