Filed 5/27/21  In re J.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | C092028 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. JVSQ3155301) |
| Plaintiff and Respondent, | |
| v. | |
| P.H., | |
| Defendant and Appellant. | |

Appellant P.H., father of the minor, appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  He contends the juvenile court's finding that the minor is adoptable is not supported by the evidence.  We disagree and will affirm.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

We limit our recitation of the facts to those necessary for resolution of the issue on appeal and incorporate additional relevant facts in the Discussion.

In May 2019, the Shasta County Health and Human Services Agency (Agency) received a report that the then five-year-old minor had put his hands down another student's pants. The minor also reported father's girlfriend had engaged in sexual acts with him, that he had seen sexual acts, and that father had exposed him to pornography. An investigation revealed father had extensive criminal and child welfare histories and had lost custody of his other children. A safety plan was made with the paternal grandmother caring for the minor, but it was discovered that the paternal grandmother was no longer protecting the minor from father. The minor was placed into protective custody and the Agency filed a section 300 petition on behalf of the minor based on father's criminal history and ongoing substance abuse issues, which had caused him to lose custody and parental rights to other children. The petition also alleged that minor's mother had ongoing substance abuse issues, which had caused her to lose parental rights over other children, and that mother's whereabouts were unknown.

Neither parent appeared at the initial hearing or at the combined jurisdiction/disposition hearing. The Agency had lost track of father's whereabouts between the two hearings. The juvenile court took jurisdiction, declared the minor a dependent child of the court, ordered him removed from parental custody, bypassed parents for reunification services pursuant to section 361.5, subdivisions (b)(1), (10), (11) and (13), and set a section 366.26 hearing for December 6, 2019.

The Agency's November 26, 2019 section 366.26 report noted that although parents had been provided with court-ordered supervised visitation, neither parent had visited the minor since his detention. The minor had been in his current foster home since August 12, 2019, and the caregivers wished to adopt him. The minor had been diagnosed with, and prescribed medication for, attention deficit hyperactivity disorder

2

(ADHD) and struggled with hyperactivity and focusing. The caregivers, however, did not consider the minor's diagnosis to be a concern. The caregivers were in the process of becoming approved for adoption and there were no known barriers to such approval.

Neither parent appeared at the December 6, 2019 section 366.26 hearing. The juvenile court found the minor was likely to be adopted, that no statutory exception applied that would make the termination of parental rights detrimental to the minor, and that adoption was in the minor's best interests. The juvenile court terminated parental rights and declared adoption the permanent plan.

### DISCUSSION

Father contends the orders terminating his parental rights must be reversed because there was insufficient evidence to support the juvenile court's finding that the minor is adoptable. We disagree.

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." (§ 366.26, subd. (c)(1).) "Although a finding of adoptability must be supported by clear and convincing evidence, it [i.e., the determination that it is likely the child will be adopted within a reasonable time] is nevertheless a low threshold . . . ." (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child; therefore, a finding of adoptability does not require that the child already be in a prospective adoptive home or that there is "a proposed adoptive parent 'waiting in the wings.' " (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 (*Sarah M.*).) On the other hand, the fact that a prospective adoptive parent has shown interest in adopting a minor is substantial evidence the minor is likely to be adopted within a reasonable time, either by that parent or some other. (*In re J.I.* (2003) 108 Cal.App.4th 903, 911, disapproved on another ground in *Conservatorship of O.B.* (2020)

3

9 Cal.5th 989, 1010, fn. 7; *In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154 (*Lukas B.*); *Sarah M., supra*, at pp. 1649-1650.)

The Agency has the burden to establish, by clear and convincing evidence, that the minor is likely to be adopted within a reasonable time. (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561.) On appeal, we "must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before [us] is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting [our] review, [we] must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B., supra*, 9 Cal.5th at pp. 1011-1012.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Applying this standard, we find substantial evidence supports the juvenile court's finding that the minor is likely to be adopted within a reasonable time.

The June 2019 detention report described the minor as a healthy child who was up to date on his well-child visits and immunizations. He had been diagnosed with ADHD and was taking his prescribed medication. Both the paternal grandmother and paternal aunt had expressed interest in placement of the minor. By the time of the disposition report, the paternal grandmother had come forward requesting placement and indicated she was interested in providing permanency, if needed. The paternal grandmother reported that the minor is healthy and has good dental hygiene with no cavities or decay. She also reported that the minor loves school. The Agency, however, had concerns about the paternal grandmother's ability to keep the minor safe from father.

The August 2019 disposition report stated that the caregiver indicated the minor needed full-time supervision. The minor was reported to become uncomfortable when doors are locked and had broken windows in a room and a travel trailer because he felt trapped inside. The caregiver also reported that the minor is comfortable engaging with strangers and does not exhibit appropriate "stranger danger." The Agency noted that a June 2019 hair follicle test of the minor, conducted shortly after his detention, had come back positive for methamphetamine.

The minor's medication was changed from Concerta, which was found to be ineffective, to Clonidine in mid-August 2019. The caregiver reported that the Clonidine made the minor behave like a "zombie," but without it, he was extremely high strung and would not calm down. By August 30, 2019, however, it was found that the minor's ADHD symptoms had improved since being prescribed Clonidine. By November 2019, the minor's behavior had improved "dramatically" and continued to positively progress. He was due to be reassessed in March 2020.

By November 2019, the caregivers reported that, behaviorally, the minor was mostly a content child who thrived with a consistent daily routine. Although he continued to struggle with hyperactivity and focusing, he took his prescribed medication to manage this behavior. The caregivers expressed minimal concerns regarding his behavior and it was expected that his behavior would continue to improve over time with a consistent and structured environment, and with his prescribed medication. Developmentally, the minor was mostly on target and his speech and language skills were on target compared to his peers.

The minor was reported to have made a smooth transition into his current caregivers' home and was reportedly thriving in the placement. He was in good health with no medical or dental concerns. Although he had struggled with his emotions and behavior when he began first grade in August 2019, and had walked to the office daily to seek comfort from the school secretary, he no longer required that reassurance. He was

described by his teacher as a "sweetheart" who "gives love to others" and was now thriving in the school environment and performing at grade level.

The current caregivers had fully accepted the minor as a member of their family and were willing to adopt him. The caregivers had three other children and had been guardians of a now-adult who also was living in the home. The caregivers stated they loved the minor and expressed a strong desire to adopt him. The minor had bonded with the caregivers and stated he wanted to live with them "forever" and did not want to live anywhere else.

The social worker opined that the minor possesses characteristics that make him adoptable, although his behavioral challenges would "somewhat restrict" the number of families available to adopt him. His current caregivers had the skills and desire to adopt the minor but, in the unlikely event that he is not adopted by the current caregivers, the Agency would first assess the minor's relatives again. If there were no available and appropriate relative options, there were "families available with approved home studies that are interested in adopting children with the minor's characteristics." Despite the fact that the minor's history of neglect and trauma had resulted in a greater likelihood of later developmental and emotional problems, he possessed numerous qualities desired by adoptive families and the social worker opined it was highly likely that he would be adopted.

Contrary to father's assertion that "the record contains a great deal of information about [the minor] which would make his adoption unlikely," the record shows the minor is a healthy seven-year-old who is prescribed medication for ADHD. Although the minor initially presented with aggressive and sexualized behavior and required full-time supervision, his behavior had improved dramatically with medication change and a consistent and structured environment. The minor was described by his teacher as a loving sweetheart and both his paternal grandmother and his caregivers expressed love for the minor. The fact that the minor continued to struggle with hyperactivity and

focusing did not render him unadoptable. Nor did his earlier aggressive and sexualized behavior.

The prospect that a minor may have some continuing behavioral problems does not foreclose a finding of adoptability. (See *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 224-225.) Prospective adoptive parents in general can be expected to realize that children in the dependency system are likely to suffer from emotional and behavior problems and to need strong parenting. Nor does a finding of adoptability require that the child already be in a preadoptive home. (§ 366.26, subd. (c)(1).) What is required is the likelihood of adoption within a reasonable time. (*Jennilee T., supra*, at p. 223.) In this case, however, there *are* interested adoptive parents who already had formed a positive bond and relationship with the minor and were willing to adopt him. (*Lukas B., supra*, 79 Cal.App.4th at p. 1154; § 366.26, subd. (c)(1).) As we have said, the fact that prospective or proposed adoptive parents are interested in adopting the minor is substantial evidence the minor is likely to be adopted within a reasonable time, either by those parents or some other. (*In re J.I., supra*, 108 Cal.App.4th at p. 911; *Lukas B.,* at p. 1154; *Sarah M., supra*, 22 Cal.App.4th at p. 1650.) The evidence supports the juvenile court's finding that it is highly probable the minor will be adopted within a reasonable time. (See *Jennilee T.*, at p. 223.)

Although the issue of adoptability usually focuses on the minor, "in some cases a minor who ordinarily might be considered unadoptable due to age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child." (*Sarah M., supra*, 22 Cal.App.4th at p. 1650.) "Where the social worker opines that the minor is likely to be adopted based solely on the existence of a prospective adoptive parent who is willing to adopt the minor, an inquiry may be made into whether there is any legal impediment to adoption by that parent [citations]. In such cases, the existence of one of these legal impediments to adoption is relevant because the legal impediment would

7

preclude the very basis upon which the social worker formed the opinion that the minor is likely to be adopted. [Citation.]" (*Ibid.*)

The term "specifically adoptable," therefore, denotes a child who, but for the existence of a prospective adoptive parent, would not be adoptable. The suitability of the prospective adoptive parent is not an issue when the child is generally adoptable; it may be placed at issue when the child is specifically adoptable. This is not such a case. The finding that the minor is adoptable was not based solely on the current caregivers' willingness to adopt. We do not, therefore, address father's argument in this regard.

Finally, father requested that *if the Agency conceded error*, this court consider evidence of subsequent events which occurred after the orders which are the subject of this appeal for the purpose of considering whether to accept a stipulation for reversal. As the Agency did not concede error or submit a stipulation for reversal, we do not consider the postjudgment evidence.

## DISPOSITION

The orders of the juvenile court (terminating parental rights) are affirmed.

KRAUSE                , J.

We concur:

RAYE                , P. J.

DUARTE                , J.

8