Filed 6/13/14  In re E.F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re E.F. et al., Persons Coming Under the Juvenile Court Law. | C075092 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. 11JVSQ2885701, 11JVSQ2885801, 11JVSQ2885901, 11JVSQ2886001) |

Appellant, mother of the minors, appeals from the juvenile court's orders finding the minors adoptable and terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395)[1]  She contends the evidence does not support the juvenile court's finding that the minors are adoptable.  We disagree and affirm.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

# BACKGROUND

On April 7, 2011, the Shasta County Health and Human Services Agency (the Agency) filed section 300 petitions on behalf of minors E. (born August 2002), S. (born June 2005), M. (born April 2007), and F. (born June 2009). As amended, the petitions alleged the parents were neglecting the minors and unable to manage them because of mother's mental health issues and the failure of F.'s father to protect them.[2] There had been 27 child welfare referrals for the family, spanning nearly two decades, for general neglect, substantial risk, physical abuse, and sexual abuse.[3] The family had one prior voluntary case in which they had received services but were still unable to functionally parent the minors.

The juvenile court took jurisdiction over the minors, declared them dependent children of the court, ordered the minors removed from the parents' physical custody, and ordered reunification services. All four children were placed together in a single foster home. During the reunification period, visitation with mother was chaotic. Visits occurred two times per week. Mother became frustrated and was unable to demonstrate basic parenting skills. The minors also demonstrated aggressive and destructive behavior after visits.

The social worker's May 16, 2011, disposition report stated that E. was having some difficulty adjusting to her placement. She offered to cook for her siblings and take care of her young brother, F. The remaining siblings were adjusting well to placement. M. has a physical limitation called torticollis and was a client of Far Northern Regional Service.

---

[2] F.'s father was living in the home when the petitions were filed, but the whereabouts of the fathers of E., S., and M. were unknown.

[3] Many of the early referrals concern an older sibling who is not a party to this appeal.

By January 2012 the minors were reported to be bonded to the foster family and to each other. E. and S. were performing at or above grade level in school and had no identifiable developmental or educational issues. They were both receiving counseling services for behavioral and emotional issues. E. (then age nine) had exhibited parentified behavior and aggression toward her siblings. She had some difficulty following adult direction and had been known to have extreme emotional breakdowns. S. (then age six) had exhibited attention-seeking behaviors, including provocative dancing. She was easily distracted and had shown some aggressive behavior at home and at school. She also had exhibited a lack of empathy and some defiance to adult direction. Neither M. nor F. had presented with any significant problems at Head Start or in the home.

By June 2012 the Agency was considering moving the minors to a more experienced foster family, partly because of the minors' behavioral issues, which escalated after visits with mother. E. and S. were still performing at or above grade level in school and had no identifiable developmental or educational issues. The two minors continued with counseling. E. was still exhibiting parentified behavior and her difficulty in expressing feelings of disappointment would often lead to emotional breakdowns. S. was still struggling with being attentive and continued to show aggressive behavior toward her siblings and peers. She also exhibited attention-seeking behavior in that she had twice urinated on herself during visits with mother. M. (then age five) had been referred to counseling as well. She had started behaving aggressively toward her siblings, being defiant toward her caregivers, and exhibiting signs of anxiety that manifested in her destruction of property (such as peeling paint off a wall and destroying furniture). The minors exhibited behavioral problems after visits with mother, but the problems were limited and did not extend for days after the visits. They were receiving therapeutic behavior services to address these problems, and the services appeared to be helpful.

Reunification services were terminated on August 31, 2012. The Agency filed a section 366.26 report in December 2012, recommending a permanent plan of adoption for all four minors. Although the minors were not yet placed in a prospective adoptive home, as the current caregivers were unable to adopt them, a prospective adoptive home had been identified with relatives in Spokane. The Agency was waiting for the Interstate Compact on the Placement of Children (ICPC) (home study) response. The minors were described by the social worker as being developmentally on target and having no major diagnosed medical issues. Their "mild behavioral issues" were being addressed by the foster parents. The minors were receiving supportive services and their behaviors were continuing to improve.

E. continued to demonstrate parentified behavior and emotional outbursts, but she was kind, caring, and helpful. She had meaningful peer relationships and good social skills. She was participating in dance and gymnastics, and enjoyed bicycle riding and crafts. She had been diagnosed with adjustment disorder.

S. was experiencing some delayed speech development as a result of chronic ear infections, for which tubes had been surgically placed. She continued to have some difficulty paying attention and some behavioral issues, but she was happy, busy, and competitive. She was participating in gymnastics and enjoyed singing, dancing, performing skits, coloring, and playing with play dough. She had been diagnosed with attention deficit hyperactivity disorder and adjustment disorder.

M. had received physical therapy for her congenital torticollis, which improved over time. She continued to show aggression toward her siblings and defiance toward her caregivers. She had fallen behind in school but was catching up. She showed signs of neglect and exposure to trauma, such as difficulty with anxiety and attachment. She could be overly friendly with people she did not know. She was participating in gymnastics and enjoyed playing with dolls and playing dress-up, princesses, and My

4

Little Pony. She had been diagnosed with attention deficit hyperactivity disorder, adjustment disorder, and an unspecified learning disorder.

F. was easily overstimulated and needed direction and supervision. He was a spunky, curious little boy who enjoyed exploring and investigating. He slept well at night and took afternoon naps. He liked playing outside, coloring, dinosaurs, LEGOs, and blocks.

In addition to possible adoption by relatives in Spokane, there were many other available homes the Agency would be considering for adoptive placement. The social worker explained that although the minors had behavioral challenges, their behavior should not be a barrier in identifying an adoptive family. There were many families open to accepting the challenges the minors demonstrated, and the minors possessed characteristics that made them adoptable. Although the minors' behavioral challenges would somewhat restrict the number of families available, there were families who had the ability and desire to parent them. The minors were described as healthy and attractive children with distinct personalities, personal interests, and positive traits that supported their adoptability. A check of the California Kids Connection listing of available families found eight families with approved home studies who wanted to adopt children with characteristics similar to those of the minors in this case. The report stated it was "highly likely" the minors would be adopted.

An addendum report filed September 5, 2013, reported that Washington State had denied the ICPC for the relatives in Spokane. The Agency was continuing its efforts to find a single adoptive home for the minors but was encountering some difficulty finding an adoptive family prepared to parent a sibling set of four with a history of behavioral problems. As a result, the Agency intended to expand its search and look for two families willing to maintain sibling contact. The Agency also continued to look into possible relative placements.

Although the minors had a history of behavioral challenges, they had continued to make progress in their therapeutic services and their behaviors had improved over time. The minors were better able to identify and express their feelings. E. (then age 11), who was quiet and reserved, often became overwhelmed by her siblings and asked for quiet time away from them.

S.'s behavior had improved greatly since she began taking medication, and her overall mood and functioning had been steadily improving. S. (then age eight) could be very loving but could still be cruel to or bully her peers. She would often lie if she believed the truth would get her into trouble. She was friendly, helpful, and tried to please in class but had anxiety around times of visitation with mother.

M. (then age six) was happy, helpful, active, bright, strived to please, and enjoyed working with others. She had leadership qualities but could be bossy, and she struggled with peer relationships. She was sometimes defiant and could not seem to get enough affection. Her anxiety and attention-seeking behaviors escalated around times of visitation with mother.

F. (then age four) was doing well academically and developing age appropriately in his daily activities and needs. When he had troubling emotions, he tended to become angry and aggressive, and to have temper tantrums. He could also be impulsive and become physically aggressive with others. It was further noted that, in addition to improving over time and with therapy, all of the minors' behaviors had improved significantly as soon as visitation with mother was reduced to one time per month.

Another addendum report was filed on October 15, 2013 -- 10 days before the section 366.26 hearing. The minors had continued to demonstrate increased behavioral problems surrounding their latest visit with mother. For example, F. had three weeks of flawless behavior prior to the visit and then displayed significant aggressive behavior during the week following the visit. M. also got into trouble in school, and both S. and E.

6

were more emotional for the 8 to 10 days following the visit.  The minors were assessed as requiring experienced caregivers with strong parenting skills.

Additionally, the minors seemed to escalate each other's negative behaviors and competed with each other for everything from affection to food.  It was the opinion of their experienced caregivers that the minors would do well if placed separately in individual homes or in groups of two.  The social worker provided research evidence supporting the proposition that there are disadvantages to placing siblings together, since the dynamics of the previous dysfunctional family may be amplified in the new home, and the development of feelings of safety and attachment may be hindered.

Noting the minors' history of behavioral issues, the social worker emphasized that they have positive characteristics and continued to opine that the minors were adoptable. The juvenile court found the minors were likely to be adopted and terminated parental rights.

## DISCUSSION

Appellant contends the juvenile court's finding that any of the minors are adoptable is not supported by substantial evidence.  We disagree.

" 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child. . . .  The permanent plan preferred by the Legislature is adoption.'  [Citation.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.)  "In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated." (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164; see § 366.26, subd. (c)(1).)

Generally, "[t]he issue of adoptability posed in a section 366.26 hearing focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649 (*Sarah M.*).)  It is not necessary that the minor already be in a

potential adoptive home, or that there even be a prospective adoptive parent.  (*Ibid.*)

Additionally, the prospect that the minors may have some continuing behavioral

problems does not foreclose a finding of adoptability.  (See *In re Jennilee T.* (1992)

3 Cal.App.4th 212, 224-225 (*Jennilee T.*).)

We review a finding of adoptability for substantial evidence.  (*In re Lukas B.*

(2000) 79 Cal.App.4th 1145, 1154.)  "On review of the sufficiency of the evidence, we

presume in favor of the order, considering the evidence in the light most favorable to the

prevailing party, giving the prevailing party the benefit of every reasonable inference and

resolving all conflicts in support of the order."  (*In re Autumn H.* (1994) 27 Cal.App.4th

567, 576.)

The sufficiency of the evidence supporting a finding of adoptability is not

forfeitable, as it is the Agency's burden to establish a dependent child's adoptability.

(See *In re Chantal S.* (1996) 13 Cal.4th 196, 210.)  However, a party claiming an

exception to adoption, such as the sibling relationship exception, has the burden of

establishing the existence of any circumstances constituting the exception to termination

of parental rights.  (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; *In re Cristella C.*

(1992) 6 Cal.App.4th 1363, 1373; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code,

§ 500.)  Mother presented neither evidence nor argument in the juvenile court that the

sibling exception should apply in this case.  Thus, that issue has been forfeited.  (*In re*

*S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2; *In re Dakota S.* (2000) 85 Cal.App.4th 494,

501-502; *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.)

Nonetheless, mother argues that "[e]ach child's place in the sibling group was . . .

another factor in there not being a likelihood that any of the children was likely to be

adopted."  The problem with framing the argument this way is that the sibling

relationship exception is an exception to the legislative preference for adoption.  It is not

a way of finding a minor is not adoptable.  And, unlike the issue of adoptability, it was

mother's burden to establish this exception, not the Agency's. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.)

Although mother opined the minors should be kept together, the minors can, and very well may, be separated for permanent placement. While there is some evidence to support mother's assertion that if the siblings were paired for placement the likelihood that a particular pair would be adopted would be *affected* by the fact that there are two siblings in the set, there was no evidence that, as a set of two siblings, they would be difficult to place. Nor was there evidence to suggest the likelihood that a single minor would be adopted would be affected by the fact that he or she is part of this sibling group if that minor were introduced alone.

Here, the social worker reported that there are many families interested in adopting children with the characteristics possessed by the minors in this case. Although search efforts had been focused, up until the time of the hearing, on relatives and nonrelatives interested in adopting the minors as a group, efforts were being expanded to consider families interested in adopting two of the siblings instead of all four. Undoubtedly, this would result in more potential adoptive families. The Agency could also place the minors individually, as no finding that individual placement of the minors would be detrimental to their well-being was made.

The minors had many positive traits. There was evidence that the minors had some behavioral and emotional problems, but there was no evidence that the minors' difficulties would necessitate specialized placement or that their problems were so severe as to pose a significant obstacle to adoption. (See *Jennilee T.*, *supra*, 3 Cal.App.4th at pp. 224-225.) Nor was there anything else about their individual traits or conditions that would make it difficult to find a person willing to adopt them. (*Sarah M.*, *supra*, 22 Cal.App.4th at p. 1649.) Indeed, the social worker reported that there were many families interested in adopting children with the traits possessed by the minors in this case.

The fact that the minors were receiving counseling services does not contradict our determination. Instead, the fact that the minors' behavior was improving over time, with counseling and the reduction in visitation with mother, can be viewed as a positive factor when considering their adoptability. Moreover, prospective adoptive parents in general can be expected to realize that children in the dependency system are likely to suffer from emotional problems and to need continuing counseling and strong parenting. As the juvenile court impliedly found, the minors' problems and needs were not out of the ordinary in this light.

Mother repeatedly stresses that E. and S. are ages 11 and 8, respectively, suggesting their age renders these girls presumptively unadoptable. Age alone, however, cannot show that any particular minor is unadoptable, since adoptability focuses on the minor's individual characteristics. (*Sarah M*., *supra*, 22 Cal.App.4th at p. 1649.) Based upon this evidence, the juvenile court reasonably could find, as it did, that although the record suggests the minors might continue to present some challenges to their caregivers, they were likely to be adopted. (Cf. *In re Roderick U*. (1993) 14 Cal.App.4th 1543, 1550.)

## DISPOSITION

The orders of the juvenile court are affirmed.


        RAYE        , P. J.

We concur:


        HULL        , J.


        BUTZ        , J.