Filed 10/3/14  In re Manuel R. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re MANUEL R., a Person Coming Under the Juvenile Court Law. | B254943<br>(Los Angeles County<br>Super. Ct. No. CK74964) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MANUEL R.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Melinda A. Green, Deputy County Counsel for Plaintiff and Respondent.

This is an appeal by Manuel R. ("father") from the juvenile court's order of March 7, 2014 terminating parental rights to his one-year-old son, Manuel R. ("child"). Father makes two contentions on appeal: (1) that the juvenile court abused its discretion by denying his petition under Welfare & Institutions Code[1] section 388 without a hearing; and (2) that the juvenile court committed prejudicial error when it denied his request for a contested hearing under section 366.26. We find that father's arguments are without merit and thus affirm the orders of the juvenile court.

*Combined Procedural Background and Summary of the Facts*

On September 24, 2012, the Los Angeles County Department of Children and Family Services ("DCFS") received a suspected child abuse referral alleging that Joanna G. ("mother") and her new born child had both tested positive for methamphetamines at the child's birth. Mother admitted using methamphetamine since she was 14 years old, which resulted in the termination of her parental rights and subsequent adoption of her four other children. The child was born prematurely at the estimated gestational age of 34 weeks and was placed in the Neonatal Care Unit. Mother refused to speak with a social worker from the DCFS, stating that she knew she would lose custody of the child due to her drug addiction.

Father was interviewed and admitted having a romantic affair with mother for over one year. At the time of the child's conception, father was in a 20-year-long relationship with his live-in girlfriend. Father expressed surprise that mother had tested positive for illicit drugs. Father denied using illicit drugs, except for the use of cocaine some 15 years earlier. Father agreed to take an on-demand drug test.

At the time of the detention hearing, father's test results were pending. The child was released to father pending the next hearing.

---

[1]     Unless otherwise indicated, further statutory references are to the Welfare & Institutions Code.

On October 9, 2012, DCFS received the results of father's drug test, which revealed that he tested positive for methamphetamine. The child was then detained by the DCFS on October 12, 2012.

Also on October 9, 2012, a social worker observed father and concluded that he was under the influence of an illicit substance due to his constant fidgeting, inability to remain in one place, dilated pupils, and rambling conversation. Father admitted that he had used methaphetamine "socially" with mother earlier that day.

On December 10, 2012, DCFS filed a first amended petition, alleging that father was a current abuser of illicit drugs which rendered him incapable of providing regular care for the child.

Father thereafter enrolled in an outpatient drug treatment program but stopped attending. He scheduled a meeting with the DCFS to sign some paperwork, but failed to appear at DCFS's offices or to notify them that he would not be appearing. He did not visit with the child on a consistent basis.

On February 21, 2013, the juvenile court adjudicated the first amended petition, finding the child at risk under section 300, subdivision (b). Father was ordered to complete reunification services consisting of individual counseling, a substance abuse program with after care and random alcohol and drug testing. Mother was denied reunification services.

In October 8, 2013, a status review revealed that father's whereabouts were unknown. Father was inconsistent in exercising his weekly visitation, and did not maintain monthly contact with DCFS. Father went months without seeing the child and when he did see him, the child cried, for father was a stranger to him. Father also failed to appear for numerous drug tests, and failed to enroll in individual counseling or a substance abuse program. Due to father's lack of compliance with the dispositional case plan, DCFS recommended to the juvenile court that it terminate father's family reunification services.

Review hearings were scheduled for August 23, 2013 and October 8, 2013. Father did not appear at either hearing. Both hearings were continued to November 8, 2013 and

3

were scheduled as a joint review hearing pursuant to section 366.21, subdivisions (e) and (f).

On October 21, 2013, father met with a DCFS social worker and expressed willingness to enroll in the programs previously ordered by the court. He admitted using methamphetamine up to one month prior to the meeting. He also admitted that he had not enrolled in any of the court ordered programs. Father could not provide an address or telephone number, and stated that he was staying with friends. He was provided with program referrals by the social worker.

Father's reunification services were terminated on November 8, 2013. Father, who was present at the hearing, was served with notice of the section 366.26 selection and implementation hearing.

The section 366.26 report prepared by the DCFS reported that the child's foster parents, with whom the child had been placed when he was one month old, wanted to adopt him. DCFS recommended termination of mother and father's parental rights.

At the selection and implementation hearing, father requested either a continuance or that it be set for a contested hearing. Father's counsel stated in this regard: "[I]n speaking with my client, he did provide me with lots of different documentation today as to programs that he has been participating in. This would go to the issue of a 388. I have not been able to prepare that today." The juvenile court noted that father had received proper notice of the hearing and that if he wanted the court to consider a section 388 petition, it should have been timely filed and served.

At the request of the juvenile court, father's counsel provided the following offer of proof as to why father was entitled to a section 388 hearing. "In speaking with my client, he does indicate that since Manuel has been removed and has been before the court that he has been visiting consistently twice a week for a period of approximately two hours, and I think the child is approximately one year old. [¶] I think with that level of consistency, my client does have a right to the contested hearing."

The minor's counsel responded that the social worker reports and the foster parents who were present in court (and ready to testify) stated that father had very few

visits with the child. Further, father had not exercised any visitation whatsoever during the previous review period.

After hearing father's, minor's and foster parents' offers of proof, the juvenile court stated that "the parental bond exception under section 366.26(c)(1)(b)(i) requires not only regular visitation, but some showing of a benefit to the child. The [father's] offer of proof did not contain any information as to why there would be a benefit [to the child]. The court will deny the contested hearing based on the [father's] offer of proof and will go forward with the 26."

The hearing was then recessed until after lunch. When the case was recalled, father's counsel stated that she was "finishing handwriting [father's] 388 request." The juvenile court indicated that father had no basis upon to which to file a 388. The court also noted that the request was untimely, being first presented at 1:50 p.m. in the afternoon of the noticed selection and implementation hearing.

The juvenile court then commenced making the required section 366.26 findings when father's counsel interrupted and requested that photographs taken during a visitation between father and the child be considered with the father's previous offer of proof in support of his request for a contested section 366.26 hearing. The juvenile court noted that it had already received father's offer of proof and that it did not meet the standards of the exception under section 366.26. The court reiterated that "there are several factors to be considered in determining whether the parental relationship would be beneficial to the child and that none of these had been proffered by the father to the court." The court also emphasized that the child had stability with his current caregivers.

Despite all of the above, the juvenile court took another recess in the case for the announced purpose of reviewing father's late-filed section 388 petition.

Father's section 388 petition requested that the court reinstate reunification services. Father contended therein that he had turned over a new leaf. He was now drug testing and attending meetings. He stated that reunification services be reinstated because he and the child had established a relationship during their visits.

After reviewing the petition, the court stated that it was "fairly meager" and only

5

included "some reports, lab reports, and testing." The court noted that there was "no information that [supported father's] claim that he is drug testing and attending meetings." The court further stated, "There is no information presented as to why a reinstatement of reunification services would be of benefit to the child." Despite the failure to present evidence of benefit to the child, the court agreed to entertain argument from counsel. Father's counsel waived argument, indicating that she had nothing further to add.

The juvenile court denied the petition and proceeded with the section 366.26 hearing. Father's request that he be allowed to testify and to present evidence was denied, since the court held that it was not a contested hearing. The court found the child to be adoptable, that no exception to adoption applied, and terminated mother's and father's parental rights. The court designated the minor's foster parents as his prospective adoptive parents.

Father filed a notice of appeal on March 7, 2014, stating therein that the "the court terminated parental rights and refused to allow him testify and present evidence."

*Issues on Appeal*

1. *The juvenile court did not abuse its discretion by denying father's section 388 petition*

A parent may petition the juvenile court for a hearing seeking to change, modify, or set aside any of the court's previous orders on the grounds of a "change of circumstances or new evidence." (§ 388, subd. (a).) "If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice. . . ." (§ 388, subd. (d).) Thus to succeed on a section 388 petition, a parent must establish by "a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

When a section 388 petition is filed, the juvenile court has two choices: either (1)

6

summarily deny the petition, or (2) conduct a hearing. (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) To avoid a summary denial, the petitioner must make a prima facie showing of evidence, which if accepted as true, would be sufficient to sustain an order granting the petition (*ibid.*), and it must appear that the best interest of the child may be served by a change in the order. A section 388 petition must include "specific allegations describing the evidence constituting the proffered changed circumstances or new evidence." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)

A juvenile court's summary denial of a section 388 petition is reviewed for an abuse of discretion. (*In re Mary G.* (2007) 151 Cal.App.4th 184, 205; *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; *In re Zachary G., supra,* 77 Cal.App.4th at p. 808.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can be reasonably deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319, quoting *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.)

In the present case the juvenile court did not err when it denied father's section 388 petition without a full hearing, because father failed to meet his initial burden. No declaration setting forth the alleged facts supporting the petition was attached to the motion. Father attached only a couple of unauthenticated documents to his petition, which provided little information regarding his alleged change of circumstances. He failed to provide any evidence to support his claim that he had been "attending meetings." He failed to even indicate what type of meetings he had attended. He also alleged no facts in the petition, which if found to be true by the court, would have shown that the granting of the petition would have been in the child's best interests.

On February 21, 2013, father was ordered to complete reunification services, including a substance abuse program with aftercare and random alcohol and drug testing. During the reunification period, father visited inconsistently with the child and failed to maintain contact with the DCFS. On October 21, 2013, one year after the child was detained, father informed a DCFS social worker that he had been using methametaphine

throughout the reunification period and had not been "ready" to participate in reunification programs. On November 8, 2013, with father present in court, the court terminated father's reunification services and a set a permanency hearing pursuant to section 366.26 for February 2014. Father first drug tested shortly before that hearing. As noted above, father did not even file his section 388 petition until mid-afternoon of the date upon which the section 366.26 hearing had been scheduled at 8:30 a.m., and even that late-filed petition was woefully inadequate.

Father maintains that he "made a strong showing of change of circumstances" merely by indicating that on October 21, 2013, some eight months after he was ordered to complete reunification services, and approximately 13 months after the child was detained from father as a newborn, he was now "willing" to comply with the juvenile court's orders. He is wrong. At the most, father alleged that he wanted to reunify with the child and in this regard to commence the reunification program. He did not present any sufficient evidence that there were changed circumstances, merely that there were alleged "changing circumstances." If a petition alleging only changing circumstances were a sufficient basis for granting a section 388 petition, then a parent who failed to reunify with a child, merely by saying that though he wasn't ready to be a parent he wants to try it at some future point, could delay the selection of a permanent home for a child. This does not promote stability for the child and is not in the child's best interests. "'[C]hildhood does not wait for the parent to become adequate.'" (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)

Further, neither father's briefs on appeal nor the petition itself attempts to make the case that granting father's petition would be in the child's best interests. At most, father's petition claims in conclusory fashion that father "visited" and had a "relationship" with his son. However, the only evidence presented was that father visited the minor (with a monitor present) very inconsistently, and there was no indication of any bonding between father and son. "The presumption favoring natural parents by itself does not satisfy the best interests prong of section 388." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 192.)

8

In short, father failed to present a prima facie case of changed circumstances in his section 388 petition. Consequently, the juvenile court did not abuse its discretion by reviewing and then denying the petition without a full hearing.

2. *The juvenile court did not err in denying father a contested section 366.26 hearing*

Father contends that the juvenile court erred and deprived him of due process of law when it refused his request for a continuance and a contested section 366.26 hearing. At a 366.26 hearing, the court is required to select and implement a permanent plan for the dependent child, and where there is no possibility of reunification, adoption is the preferred plan. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1153.) It is preferred over both a legal guardianship and long term foster care. (*San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 885.) "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of a parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

Section 366.26 subdivision (c)(1)(B)(i) provides an exception to adoption only in those rare cases where the parents have maintained regular visitation and contact with the child and the court finds that that child would benefit from the continuing relationship. (See *In re Jasmine D., supra,* 78 Cal.App.4th at pp. 1348-1349.)

Father contends that the court should have granted a contested 366.26 hearing because there was a contested issue of fact as to whether he consistently visited with the child. However, father's offer of proof was insufficient to warrant a hearing, because he carried the burden of proving not only that he maintained regular and consistent contact with the child, but that he shared such a significant bond with the child that termination of his parental rights would have been detrimental to the child. He made no offer of proof that such a bond existed, the termination of which would have been detrimental to the child. Therefore, even if he could prove consistent visitation with the child, which

9

would have been inconsistent with his own prior statements, this finding would have been insufficient to sustain his burden of proof under section 366.26.

Furthermore, the failure of a parent to progress beyond monitored visitation with a child can justify an order terminating parental rights. Here, father never progressed beyond monitored visitations with the child. (See *In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1108-1109.)

The juvenile correct was thus correct when it found that the "offer of proof" was inadequate and that there was absolutely no showing whatsoever that a continuing parental relationship between father and the child would have been beneficial to the child. Consequently, the juvenile court did not abuse its discretion when it denied father's last minute request for either a continuance or a contested 366.26 hearing.

*Disposition*

The juvenile court's termination of father's parental rights over the child is hereby affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]


We concur:


TURNER, P. J.


KRIEGLER, J.

---

[*]     Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.