Filed 4/7/16  In re T.P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re T. P., A Person Coming Under the Juvenile Court Law. _____ SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY,       Petitioner and Respondent v. M. P.,       Defendant and Appellant, | D068618 (Super. Ct. No. NJ014711) |

APPEAL from an order of the Superior Court of San Diego County, Michael Imhoff, Commissioner.  Order affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Daniela Davidian, Deputy County Counsel, for Plaintiff and Respondent.

M.P. (Mother) appeals a juvenile court order terminating parental rights to her daughter T.P. She contends the San Diego County Health and Human Services Agency (the Agency) did not exercise due diligence in an effort to locate her before opting to serve notice of the Welfare and Institutions Code section 366.26 hearing upon her attorney instead of serving her, and that the failure to provide personal notice to her in the manner required by statute constituted a violation of her fundamental due process rights. (Undesignated statutory references are to the Welfare and Institutions Code.) She also contends the evidence does not show that T.P. was generally adoptable. We reject her contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, the Agency filed a petition alleging that T.P. (then 13 years old) was a minor described by section 300, subdivision (j) because her sister, 17-year-old K.P., had been sexually abused by their father (Father), Mother had failed to protect K.P. and T.P. was therefore at substantial risk of being sexually abused. The Agency also filed petitions for K.P. and T.P.'s six other siblings. T.P. and two of her siblings were detained in the nonrelated extended family member (NREFM) home of Leigh and Greg L. T.P.'s other siblings were spread among another NREFM home, as well as the homes of their two adult sisters.

At the December 2012 contested jurisdictional hearing, the juvenile court sustained T.P.'s petition. She was later declared a dependent of the juvenile court, removed from her parents' custody and placed in Leigh and Greg's home. The court granted Mother unsupervised visits. In the meantime, Father was incarcerated and

2

Mother filed for divorce. At the January 2014 twelve-month review hearing, the court ordered that T.P. remain in her NREFM placement. The court found that Mother had made substantive progress with the provisions of her case plan, but it terminated Father's court-mandated reunification services.

In March 2014, the Agency could not locate Mother and T.P.'s five siblings. At the April 2014 eighteen-month review hearing, the juvenile court terminated Mother's court-mandated reunification services. It found that the appropriate permanent plan for T.P. was another planned permanent living arrangement and continued her NREFM placement. In a March 2015 report, the social worker stated the Agency had been unable to notice the parents of the section 366.26 hearing, and she had been informed it was possible Mother was in South Africa with Father and the younger siblings.

The Agency mailed notice of the August 2015 section 366.26 hearing to Mother's trial counsel. At the hearing, the juvenile court found that reasonable search efforts had been made to locate and notify Mother of the proceeding, terminated the parents' parental rights and found that T.P. was adoptable. Mother timely appealed.

DISCUSSION

I. *Notice to Mother*

Mother contends the juvenile court erred in failing to notice her and T.P.'s grandparents of the section 366.26 hearing and in finding that the Agency used due diligence in attempting to locate her. The Agency asserts Mother forfeited the alleged error because her attorney never argued the notice in this case was defective or that there had been a violation of due process. We agree with the Agency.

3

Parents must be notified of all proceedings involving the minor. (§ 302, subd. (b).) Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover B. & T. Co.* (1950) 339 U.S. 306, 314.) Section 294 specifies the necessary contents, timing, and methods for service of the notice for a section 366.26 hearing. Subdivision (f) of section 294 describes seven methods by which notice of a section 366.26 hearing may be given to a parent, including, service on a parent's attorney if the whereabouts of the parent is unknown and there has first been due diligence in attempting to locate and serve the parent. (§ 366.23, subd. (f)(7)(A).) Additionally, if the parent's whereabouts are unknown, the Agency is required to provide notice of a section 366.26 proceeding to the grandparents of the child, if their address is known. (§ 294, subd. (a)(5).) Nonetheless, a parent can forfeit any deficiencies in providing statutory notice by failing to raise them in the juvenile court. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1152 [failure to object to inadequate notice forfeited claim on appeal]; *In re Joseph E.* (1981) 124 Cal.App.3d 653, 657 [points not raised in trial court may not be urged for first time on appeal].)

Here, at the July 2015 selection and implementation hearing, neither of the parent's attorneys objected to the notice finding. At the contested section 366.26 hearing in August 2015, the juvenile court made a finding that notice had been given. The attorneys for the parents again raised no objection to the notice provided in this case. Mother's attorney never argued the notice to her or the grandparents was defective or that there had

4

been any violation of due process. Accordingly, Mother forfeited any claimed error in notice.

In any event, even assuming Mother did not forfeit the issue and notice to her and the grandparents was deficient, we conclude any deficiency was harmless. (*In re A.D.* (2011) 196 Cal.App.4th 1319, 1325 (*A.D.*) ["a failure to give notice in dependency proceedings is subject to a harmless error analysis"].) As we shall discuss, even if Mother or the grandparents had attended the hearing, the evidence compelled the juvenile court to rule as it did. (*Post*, pt. II.)

We reject Mother's argument that the notice errors amount to reversible per se structural errors. In *In re James F.* (2008) 42 Cal.4th 901, our Supreme Court considered whether the juvenile court's error in the procedure used to appoint a guardian ad litem for the father constituted structural error, requiring automatic reversal of an order terminating the father's parental rights, or instead was trial error subject to harmless error review. (*Id.* at p. 910.) Our high court applied the harmless error standard to the due process challenge and cautioned against use of the structural error doctrine in dependency cases. (*Id.* at p. 915.) Analyzing *In re James F.*, the court in *A.D.* applied the harmless error standard to evaluate the Agency's alleged failure to provide notice of the 12-month review hearing. (*A.D.*, *supra*, 196 Cal.App.4th at p. 1327.)

Mother's reliance on *In re Jasmine G.* (2005) 127 Cal.App.4th 1109 and *In re DeJohn B.* (2000) 84 Cal.App.4th 100 is inapt. In these cases, there was a complete failure to make any attempt to give notice. (*In re Jasmine G.*, at p. 1116.; *In re DeJohn B.* at pp. 102, 110.) Here, the representations of Mother's counsel at the hearing show

Mother had notice of the hearing as counsel had communicated with Mother by e-mail and Mother declined to appear by telephone.

## II. *Adoptability Finding*

At the section 366.26 permanent plan selection and implementation hearing, the juvenile court has three options: (1) terminate parental rights and order adoption as the permanent plan, (2) appoint a legal guardian for the dependent child, or (3) order the child placed in long-term foster care. (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534.) Adoption is the permanent plan preferred by the Legislature. (*Ibid.*) All that is required to show a dependent child is adoptable is "clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time." (*In re Zeth S.* (2003) 31 Cal.4th 396, 406; see § 366.26, subd. (c)(1).) The issue of adoptability focuses on the child and whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. (*In re Zeth S.*, at p. 406.) Once the juvenile court finds by clear and convincing evidence that the child is likely to be adopted within a reasonable time, the court is required to terminate parental rights and select adoption as the permanent plan "unless the parent shows that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivisions (c)(1)(A) and (B)." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

Here, Mother does not contend that one of the exceptions to adoption apply; rather, she asserts the juvenile court erred in finding T.P. was generally adoptable. The standard on review is whether there is substantial evidence to support the finding the

child is likely to be adopted within a reasonable time.  (*In re Zeth S.*, *supra*, 31 Cal.4th at p. 406.)  "[T]he law does not require a juvenile court to find a dependent child 'generally adoptable' before terminating parental rights.  All that is required is clear and convincing evidence of the likelihood that the dependent child will be adopted within a reasonable time."  (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1313.)  The fact that a prospective adoptive family is willing to adopt the child is evidence that the child is likely to be adopted by that family or some other family in a reasonable time.  (*In re Lukas B.*, *supra*, 79 Cal.App.4th at p. 1154.)

The record shows that T.P. was specifically adoptable as her caregivers were committed to adopting her and T.P. wanted to be adopted by her caregivers.  The caregivers had an approved placement and had completed the necessary criminal and child welfare background clearances.  A social worker described T.P. as "a healthy, smart, active, and sweet 16 year old girl" and assessed her as generally adoptable "due to her many positive attributes, good health[], and normal development."  There were six possible San Diego County Adoptions families approved to adopt a child matching T.P.'s characteristics.  Thus, the record also supported a finding that T.P. was generally adoptable despite her age.  In summary, the evidence supported a finding that T.P. was likely to be adopted by her caregivers or by another family.

Mother contends that should T.P.'s caretakers not adopt her, T.P. would not want to be adopted by strangers and that T.P. should remain at the caregivers' home under a plan of long-term foster care.  Where, as here, a child is adoptable based on a particular family's willingness to adopt the child, the trial court must determine whether there is a

7

legal impediment to adoption.  (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1061.)  The court found no legal impediment to adoption existed and Mother cited no evidence showing the existence of any possible legal impediment to adoption by T.P.'s current caregivers.  T.P.'s caregivers have known her since she was five years old, began tutoring her twice a week when she was seven years old, maintained contact with her thereafter and are currently committed to adopting her.  It is not reasonably likely that T.P.'s caregivers will abandon her at this juncture.  Thus, we reject Mother's speculative argument that long-term foster care was the better plan for T.P. as the evidence amply supported the juvenile court's finding that T.P. was likely to be adopted by her current caregivers in a reasonable time.

## DISPOSITION

The order selecting adoption as T.P.'s permanent plan and terminating parental rights is affirmed.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.